Rule 23 order filed
January 26, 2015;
Motion to publish granted
February 23, 2015

2015 IL App (5th) 140341

NO. 5-14-0341

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| *In re* E.W., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | St. Clair County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 13-JD-22 |
| | ) | |
| E.W., | ) | Honorable |
| | ) | Walter C. Brandon, Jr., |
| Respondent-Appellant). | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court, with opinion.
Justices Chapman and Schwarm concurred in the judgment and opinion.

**OPINION**

¶ 1    As a preliminary matter, because this appeal involves a final order from a delinquent minor proceeding arising out of the Juvenile Court Act of 1987 (the Juvenile Court Act) (705 ILCS 405/1-1 *et seq.* (West 2012)), Illinois Supreme Court Rule 660A(f) (eff. July 1, 2013) requires that, except for good cause shown, the appellate court issue its decision within 150 days of the filing of the notice of appeal. Accordingly, the decision in this case was due on November 29, 2014. The case was placed on the December 18, 2014, oral argument schedule, and we now issue this opinion.

1

¶ 2    This case was designated for extended jurisdiction juvenile (EJJ) prosecution pursuant to section 5-810 of the Juvenile Court Act (705 ILCS 405/5-810 (West 2012)). In the EJJ prosecution, the respondent, E.W., was adjudicated delinquent after entering a fully negotiated guilty plea to criminal sexual assault. In accordance with the plea agreement, the trial court sentenced him to a term of probation for five years. The respondent then entered an open guilty plea for the adult portion of the EJJ proceeding, and the court entered a 15-year conditional adult sentence, which was stayed pending successful completion of the juvenile sentence. The stay was thereafter lifted when the respondent was found to have violated his probation, and the adult sentence was imposed. Following the imposition of the adult sentence, the respondent filed a petition for postconviction relief pursuant to section 122-1 of the Post-Conviction Hearing Act (the Act) (725 ILCS 5/122-1 (West 2012)), arguing that his guilty plea was unknowing and involuntary. He also filed a motion to reconsider the sentence on the basis that the trial court lacked jurisdiction to lift the stay on the previously imposed adult sentence because the State did not file a petition requesting that the stay be lifted. The trial court denied the postconviction petition and the motion to reconsider.

¶ 3    On appeal, the respondent argues that the trial court erred by summarily dismissing his petition for postconviction relief in that the court failed to correctly admonish him in accordance with Illinois Supreme Court Rule 402 (eff. July 1, 2012), which rendered his guilty plea unknowing and involuntary; the court erred by imposing an adult sentence of 15 years without conducting a sentencing hearing; he was denied due process when the

2

court lifted the stay on his adult sentence because he was not given sufficient notice as to the nature of the hearing; the court improperly imposed a mandatory supervised release (MSR) term of natural life where the appropriate sentence was an indeterminate term of 3 years to natural life; and he was entitled to 253 days' credit for time served. For the reasons that follow, we reverse the court's denial of the postconviction petition and remand for second-stage proceedings and affirm as modified with regard to the direct appeal.

¶ 4 On January 31, 2013, the State filed a petition for adjudication of wardship against the respondent, who was 15 years old, charging him with two counts of criminal sexual assault, a Class 1 felony. On April 12, 2013, the State filed a motion to designate the proceeding as an EJJ prosecution pursuant to section 5-810 of the Juvenile Court Act (705 ILCS 405/5-810 (West 2012)). Section 5-810(1)(a) of the Juvenile Court Act allows the State to file a petition to designate a proceeding as an EJJ prosecution when a juvenile has been charged with an offense that would be a felony if committed by an adult. 705 ILCS 405/5-810(1)(a) (West 2012). A rebuttable presumption that the proceeding shall be designated as an EJJ proceeding is created where the juvenile judge makes the determination that there is probable cause to believe that the allegations contained in the petition are true. 705 ILCS 405/5-810(1)(a) (West 2012).

¶ 5 The juvenile judge must enter an order designating the case as an EJJ proceeding, unless the court finds, based on clear and convincing evidence, that sentencing the minor as an adult would not be appropriate. 705 ILCS 405/5-810(1)(b) (West 2012). In making

this determination, the trial court must consider various factors, such as the minor's age, delinquency or criminal history, abuse or neglect history, mental health, physical, and/or educational history, and the circumstances of the offense, advantages of treatment within the juvenile justice system, and whether public security requires an adult sentence. 705 ILCS 405/5-810(1)(b) (West 2012). Where the EJJ proceeding results in a finding of guilt, the court is instructed to impose a juvenile sentence and an adult sentence, which is stayed on the condition that the offender not violate the juvenile-sentence provisions. 705 ILCS 405/5-810(4) (West 2012).

¶ 6 Here, the hearing on the motion to designate the proceeding as an EJJ proceeding was held in June 2013. At the hearing, the State argued that the following evidence established the rebuttable presumption that the case should be designated as an EJJ proceeding: the respondent was 15 years old; he was charged with two counts of criminal sexual assault, a Class 1 felony; the seriousness of the offenses; and the lack of remorse shown by the respondent. The respondent and the State entered into a stipulation as to his age and the fact that the charges were felonies. Defense counsel then declined to present any evidence to refute the State's arguments. The court found probable cause had been established and designated the case as an EJJ proceeding.

¶ 7 In July 2013, the State filed an amended petition for adjudication of wardship against the respondent, charging him, in addition to the two original counts for criminal sexual assault, with four counts of criminal sexual abuse and three counts of aggravated criminal sexual assault. The State also filed an amended motion to designate the

4

proceeding as an EJJ proceeding. During the August 29, 2013, guilty plea hearing, the State informed the trial court that a hearing had not been held on the amended motion to designate the proceeding as an EJJ proceeding and therefore the seven charges contained in the amended petition for adjudication had not been designated EJJ. The State renewed its arguments from the previous hearing, and defense counsel stipulated that the age of the minor and the nature of the offenses were sufficient for the proceeding to be "considered and to be treated" as an EJJ proceeding. The court found probable cause had been established and designated the proceeding as an EJJ proceeding.

¶ 8    The State then proceeded to recite the terms of the plea agreement, which required the respondent, in pertinent parts, to enter a fully negotiated guilty plea to one count of criminal sexual assault as part of the juvenile portion of the proceedings and serve a period of probation for five years. In exchange, the State would dismiss the remaining eight counts. As for the adult sentence, the State informed the court that negotiations had "broken down" and that no agreement had been reached concerning the disposition.

¶ 9    After hearing the terms of the fully negotiated juvenile guilty plea and the fact that no agreement had been reached on the adult portion of the sentence, the court admonished the respondent that it was not required to follow the agreement and that it could sentence him to the "Department of Juvenile Justice for a period of time but not to exceed 30 years or his 21st birthday and/or *** sentence [him] to the Department of Corrections for 30 years." The court proceeded to admonish the respondent concerning the voluntariness of his guilty plea, asking whether he was under the influence of alcohol or controlled

5

substances, whether his psychotropic medication was helping him understand the proceeding (he had a history of mental illness), and whether anyone was forcing him or threatening him to enter a guilty plea. The following colloquy then occurred between the court and the respondent:

"THE COURT: Are you pleading guilty because that's what you want to do?

THE [RESPONDENT]: Yes, sir.

THE COURT: Sir, do you understand that by pleading guilty that there won't be a trial?

THE [RESPONDENT]: Yes, sir.

THE COURT: And if there was a trial, sir, it would be the State's burden of proof to prove that you're guilty of each one of these counts beyond a reasonable doubt. Do you understand that, sir?

THE [RESPONDENT]: Yes, sir."

The court thereafter admonished the respondent concerning his right to cross-examine witnesses, the opportunity to present witnesses on his own behalf, and the right to testify. The court admonished him that he would be waiving those rights by entering a guilty plea and asked him the following question: "Sir, by giving up those rights, you're basically telling me and the world that you are guilty. Is that what you want to do, sir? It's up to you, sir." In response, the respondent said, "Yes, sir."

¶ 10    After the above admonishments were given, the State recited the factual basis.

6

During this recitation, the State noticed an error on the amended petition for adjudication and requested that count V be amended by interlineation from aggravated criminal sexual assault to criminal sexual assault, which changed the category of the offense from a Class X to a Class 1 felony. The court then read the charge to the respondent, and the following colloquy occurred between the court and the respondent:

"THE COURT: *** Sir, are you guilty or not guilty of Count V?

THE [RESPONDENT]: Guilty.

THE COURT: Are you sure you want to plead guilty, sir?

THE [RESPONDENT]: Yes."

The court then gave the respondent and his mother an opportunity to make a statement. In accordance with the plea agreement, the court adjudicated the respondent delinquent and sentenced him to five years' probation.

¶ 11    After entering the sentence for the juvenile portion of the proceeding, the trial court immediately transitioned to the adult portion. As the State was presenting its argument for sentencing, the court interrupted to advise the respondent as follows with regard to sentencing: "Let me just advise you, sir, of possible sentences. You did plead guilty to this Class 1. Sir, you can be sentenced to not less than 4 years and not more than 15 years to the Department of Corrections, sir. Mandatory−probation or mandatory supervised release for two years, sir. Probation is not to extend four years. And, sir, the fine can be $25,000, sir. You understand?" The respondent indicated that he understood. The proceeding was then taken off the record. Once back on the record, the court advised

7

the respondent as follows: "Let me backtrack, sir. *** I gave you some information that I have to correct. Sir, by pleading guilty to that Class 1 delinquency criminal sexual assault, the period of incarceration is 4 to 15 years, sir. Mandatory supervised release is three years to natural life, sir. Do you understand?" The respondent indicated that he understood. The court then stated: "There's a period of *** extended term incarceration [*sic*] could run 15 to 30 years, sir." The respondent was not asked whether he wished to persist in his guilty plea after hearing the court's corrected admonishments concerning the possible sentences.

¶ 12    The State and defense counsel then presented their arguments for the adult sentence. The State requested that the court impose the maximum amount of incarceration, 15 years, or, alternatively, an MSR term for natural life, while defense counsel requested that the court stay the imposition of the adult sentence and that in the event that the juvenile probation was not successfully completed, the adult sentence be imposed. Alternatively, the respondent's attorney requested that the minimum extended sentence be imposed. During the arguments, the court noted that the respondent had not waived his right to a jury trial and asked counsel whether he had conferred with the respondent concerning that waiver. Counsel responded that he had explained to the respondent that he would be waiving his right to a jury trial if he entered a guilty plea. The court then asked the respondent whether he understood and he indicated that he did.

¶ 13    The trial court sentenced the respondent to the maximum sentence of 15 years in the Department of Corrections with an MSR of natural life. This adult sentence was

8

stayed pending successful completion of the juvenile sentence. The court then admonished the respondent as follows: "[S]ir, you have from 30 days from today's date, sir, to file what's known as a motion to vacate, set aside, or modify what we just did, sir. That motion has to be filed at the St. Clair County Circuit Clerk's Office, sir. *** Do you understand, sir?" The respondent indicated that he understood. The following colloquy then occurred between the court and the respondent:

"THE COURT: Sir, once you and your attorney have concluded the preparation of that motion, as I stated, it needs to be filed within 30 days of today's date. Once it is filed, sir, I will receive a copy of it. I will have an opportunity to review it, sir. I can agree with your motion, sir, and decide to modify it. I can go along with it, sir, and set this all aside. Now, if I modify it, sir, you'll be notified of the modification. If I were to set it all aside, sir, what I would do, you, sir, would basically receive notice of another court date, sir. At that court date we would ask the State if, in essence, they wanted to go to trial. If they did, sir, we would go to trial on this matter, sir, meaning we'll be starting back over at square one, sir. The State would have the option if they wanted to keep this matter in the juvenile arena or to proceed in the adult arena. Do you understand, sir?

THE [RESPONDENT]: Yes, sir.

THE COURT: Now, that's if I agree with your motion, sir. Now, sir, if I were to deny your motion, sir, you would receive another 30 days from that date in time that I denied your motion, sir, giving you another opportunity to file another

9

piece of paper at the same St. Clair County Circuit Court's Office, sir. This time, sir, that piece of paper will be entitled a notice of leave to appeal, sir. And that would do two things, sir. First, it would tell me that you disagree with what we did today. And second, sir, it will tell me that you wanted to appeal my decision to the Appellate Court, which is located in Mt. Vernon, sir.

Do you have any questions, sir, concerning your Appellate Court rights, sir?

THE [RESPONDENT]: No, sir."

The court then advised the respondent of his right to an attorney and to a copy of the transcript of the guilty plea and sentencing proceedings. The court advised him that if he violated the terms of the juvenile probation, he would be "going to the Department of Corrections *** for 15 years." The respondent did not file a motion to withdraw his guilty plea or a motion challenging his sentence. He also did not file a notice of appeal.

¶ 14 On December 18, 2013, the State filed a petition to revoke the respondent's probation based on the following allegations: he was suspended at school for fighting and he was noncompliant with counseling. On January 15, 2014, a hearing was held on the petition. At the hearing, the State dismissed the count concerning the fighting at school and proceeded on the count relating to the noncompliance with counseling. Testimony was presented by Tyler Roy, the respondent's counselor for sexual offender counseling, where Roy indicated that although the respondent was respectful and had attended and actively participated in the counseling services, he was considered noncompliant because he refused to admit that he had acted in an inappropriate sexual nature. After hearing the

10

testimony and the arguments from counsel, the trial court found that the State had met its burden of proof and concluded that the respondent was noncompliant with counseling. The State and the respondent's counsel agreed that a sentencing hearing should be held after a social investigation report was prepared.

¶ 15    On February 14, 2014, the sentencing hearing was held.  At the hearing, the trial court was presented with a Redeploy assessment and a probation department assessment. The court indicated that it had reviewed those documents.  The State requested that the respondent be sentenced to the Department of Juvenile Justice.  The respondent presented testimony from his mother, who indicated that the respondent had been expelled from school for behavioral problems, but she had a new school lined up for him in Missouri. The respondent made a statement in allocution.  His counsel requested that he be placed on probation where he could receive treatment and that he be assigned a different counselor to give him an opportunity to comply with counseling.

¶ 16    The trial court noted that no one had identified a different location where the respondent could obtain counseling services.  The court also noted that the respondent's mother had testified concerning "something in Missouri," but there was never any mention of a particular school district.  The court stated that it was put "in between kind of a rock and a hard place" because the respondent did need counseling services, but that he has to acknowledge that he needs those services.  The court noted that the respondent had never admitted committing the sexual assault and that his counselor had testified that he needed to acknowledge his guilt in order to move forward with counseling.  The court

11

then stated as follows:

"I did have an opportunity to review my notes. I want to note for the record that the court service and probation report was filed timely, along with the Redeploy Illinois assessment ***. I did have an opportunity to review both of those documents.

*** I did have an opportunity to review the results of any assessments of the minor, the minor's educational background, including educational assessments, services, length of history, the minor's physical and mental health, including any diagnostic services and compliance with treatment, community-based services provided to the minor and compliance with them, the outcomes of those services, and the services available through the Department of Juvenile Justice, the services that are available outside.

* * *

And in all the reports there's a mention of the safety of the community, dealing with the minor, with the minor being out.

* * *

And though *** the minor's mother *** testified about making contact with some alternative schools, none have been identified or information brought to the attention of the Court.

One of the many things, is this young man receiving the actual needed counseling for the sexual offender. The Redeploy report ends, as was brought to

12

the attention of the Court from the State, 'Because the nature of this crime and the risk factors to the safety of the community, Redeploy does not consider [the respondent] to be eligible for community-based services. The service recommendation, if [the respondent] is not committed to IDJJ, it will be imperative that he be mandated to juvenile sex offender counseling. And consistent, would be compliant with his psychiatric and medication management.'

If you'll notice, I did ask about, if we have an identified location where he can receive the treatment. That is very important.

And the young man's attorney did bring up some good things. That no matter what happens, he will get out. And without any treatment, we're just postponing something that could be bigger and worse.

But I do note when we entered into this agreement of staying the adult disposition, we emphasized this to the young man, that it was very important that he cooperate, follow all the recommendations.

I am going to revoke the minor's juvenile sentence, and I'm going to impose the adult sentence. That mittimus is going to issue, sir, and the adult sentence is 15 years in the Department of Corrections. Mandatory supervised release is going to be for natural life, sir."

¶ 17 On March 14, 2014, the respondent's counsel filed a petition for postconviction relief pursuant to section 122-1 of the Act (725 ILCS 5/122-1 (West 2012)), arguing that the trial court failed to properly admonish the respondent concerning his right to a jury

13

trial and that the respondent did not waive his right to a jury trial. The petition further alleged that had the respondent been properly informed of his constitutional rights, he would not have pled guilty and would have proceeded with a jury trial. Also, on the same day, the respondent filed a motion to reconsider sentence, arguing that the court lacked jurisdiction to lift the imposed stay on the adult conditional sentence because the State failed to file a petition to revoke the stay. On June 9, 2014, the respondent's postconviction petition and motion to reconsider were denied. The respondent appeals.

¶ 18    The respondent first argues on appeal that his guilty plea was unknowing and involuntary where the trial court failed to properly admonish him pursuant to Illinois Supreme Court Rule 402 (eff. July 1, 2012). He requests that we vacate his guilty plea. Alternatively, he requests that the case be remanded for resentencing where he was not given a sentencing hearing following the entry of the open guilty plea to the adult sentence, an issue that was not raised in his postconviction petition.

¶ 19    In response, the State argues that this court does not have jurisdiction to consider the respondent's arguments concerning the initial EJJ proceeding where the guilty plea was entered and the 15-year conditional adult sentence was imposed and stayed, except for the issues raised in his postconviction petition, because the respondent failed to file a postplea motion in the trial court challenging the underlying plea and the conditional adult sentence and failed to file a notice of appeal within 30 days of the EJJ proceeding. In support of this position, the State compares the EJJ proceedings to probation-revocation proceedings and notes that an underlying guilty plea cannot be attacked in probation-

14

revocation proceedings unless a motion is filed within 30 days of the entry of the guilty plea. See *In re J.T.*, 221 Ill. 2d 338, 346 (2006) (the court lacked jurisdiction to consider on appeal any issues arising from the juvenile's negotiated guilty plea or his sentence as he failed to timely file a notice of appeal from the order sentencing him to probation, a motion to withdraw his guilty plea, or a motion for leave to file a late notice of appeal).

¶ 20 We agree with the State that the EJJ procedure is substantially similar to the procedure followed for the revocation of probation. Compare 705 ILCS 405/5-810 (West 2012) with 730 ILCS 5/5-6-4 (West 2012). Therefore, as in probation-revocation proceedings, we conclude that the respondent cannot now challenge his guilty plea and the imposition of the stayed 15-year conditional adult sentence because we have no jurisdiction to entertain a review of the initial EJJ proceeding where the respondent did not timely file a notice of appeal from the order sentencing him to juvenile probation. However, the respondent has filed a timely postconviction petition challenging the guilty plea admonishments given to him when he entered his guilty plea, and we can therefore address the admonishment issue under the Act.

¶ 21 Ordinarily, the Act (725 ILCS 5/122-1 *et seq.* (West 2012)) is not applicable in juvenile proceedings and to a juvenile who was adjudicated delinquent in an EJJ prosecution where an adult conditional sentence had also been imposed. *In re Vincent K.*, 2013 IL App (1st) 112915, ¶ 50. However, in the present case, the trial court imposed a sentence of imprisonment, which brought the case within the scope of the Act. See *id.* (petitioner filing a postconviction petition must have conviction prior to seeking

postconviction relief). The Act permits a criminal defendant to collaterally attack his conviction and sentence based on violations of his constitutional rights. *People v. Erickson*, 183 Ill. 2d 213, 222 (1998).

¶ 22 A postconviction proceeding not involving the death penalty is divided into three stages. *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). At the initial stage, the trial court independently examines the postconviction petition to determine whether it is frivolous or patently without merit, *i.e.*, the petition has no arguable basis in law or fact. 725 ILCS 5/122-2.1(a)(2) (West 2012); *Vincent K.*, 2013 IL App (1st) 112915, ¶¶ 38-39. A petition is frivolous or patently without merit if the allegations, taken as true, fail to present the gist of a constitutional claim. *People v. Brown*, 236 Ill. 2d 175, 184 (2010). This first-stage standard applies even when the initial petition is prepared by counsel. *People v. Tate*, 2012 IL 112214, ¶ 12.

¶ 23 If the petition is not summarily dismissed by the court at the first stage of the proceeding, it advances to the second stage, where an indigent defendant is entitled to appointed counsel who may review and amend the petition. 725 ILCS 5/122-4 (West 2012); *Gaultney*, 174 Ill. 2d at 418. In addition, the State is permitted to file an answer or move to dismiss the postconviction petition. 725 ILCS 5/122-5 (West 2012); *People v. Hodges*, 234 Ill. 2d 1, 10-11 (2009). If the court finds that the allegations in the petition and accompanying documentation fail to make a substantial showing of a constitutional violation, it may dismiss or deny the petition. *Vincent K.*, 2013 IL App (1st) 112915, ¶ 38. If the petition is not dismissed or denied, the case advances to the third stage, where

the court conducts an evidentiary hearing. 725 ILCS 5/122-6 (West 2012); *Gaultney*, 174 Ill. 2d at 418. The postconviction petition filed in the present case was dismissed at the first stage of the postconviction proceedings. The summary dismissal of a postconviction petition is subject to *de novo* review. *Vincent K.*, 2013 IL App (1st) 112915, ¶ 39.

¶ 24 To satisfy due process, a guilty plea must have been made voluntarily and intelligently. *People v. Fuller*, 205 Ill. 2d 308, 322 (2002). In furtherance of this, Illinois Supreme Court Rule 402(a) (eff. July 1, 2012) instructs the trial court that it cannot accept a plea of guilty unless certain admonishments are given to a defendant and the court has determined that the plea is knowing and voluntary. The court is obligated to inform a defendant, and make sure he understands, among other things, the nature of the charge, the minimum and maximum sentence and penalties to which he may be subjected to, that he has the right to plead not guilty or to persist in that plea if it has already been made, and that he waives the right to a jury trial by entering a guilty plea. Ill. S. Ct. R. 402(a) (eff. July 1, 2012). The failure to properly admonish a defendant does not automatically require a reversal or the vacation of the guilty plea. *Fuller*, 205 Ill. 2d at 323. Substantial compliance with Rule 402 is all that is necessary to satisfy the rule's requirements. *Id.* Whether reversal is required depends on whether real justice has been denied or whether a defendant has been prejudiced by the imperfect admonishments. *People v. Dougherty*, 394 Ill. App. 3d 134, 139 (2009). The crucial time for determining whether a guilty plea was made voluntarily and intelligently is at the time that the plea is taken. *People v. Johns*, 229 Ill. App. 3d 740, 744 (1992).

17

¶ 25    In the present case, the respondent's postconviction petition argues that his guilty plea was unknowing and involuntary because the trial court failed to correctly admonish him pursuant to Illinois Supreme Court Rule 402 (eff. July 1, 2012), in that he was not admonished concerning his right to a jury trial and that he had not waived this right.  In his brief, he points to various other deficiencies concerning the trial court's Rule 402 admonishments and requests that this court vacate his guilty plea on postconviction because the plea was not knowing and voluntary.  Specifically, he argues that the court failed to admonish him regarding the minimum and maximum sentence, that an MSR of three years to natural life was included in the sentence, that he had a right to a jury trial, and that he had the right to persist in a plea of not guilty.  In response, the State argues that the respondent has forfeited any challenge to the Rule 402 admonishments, except for the admonishment concerning his right to a jury trial, because he failed to challenge the other deficiencies in the Rule 402 admonishments in his postconviction petition.

¶ 26    We recognize that the State is correct in that the respondent's postconviction petition only challenges the jury trial admonishment.  However, in order to determine the ultimate question of whether the court substantially complied with the admonishment requirements of Rule 402, we find it necessary to review and consider all of the Rule 402 admonishments that were given to the respondent.  We therefore turn to that analysis.

¶ 27    After carefully reviewing the respondent's postconviction petition and the record, we conclude that the postconviction petition sets forth the "gist" of a constitutional claim and that the circuit court erred in dismissing it at the initial stage of the postconviction

18

proceedings. The respondent was charged with a Class 1 felony where the sentencing range was 4 to 15 years. The trial court initially failed to admonish him concerning the minimum sentence for this charge and indicated that the maximum sentence was 30 years. As the State has conceded, this was incorrect. However, the State argues that the court corrected its mistake during the adult portion of the EJJ proceedings when it acknowledged that it had given incorrect information and that the sentencing range was 4 to 15 years with an extended term sentencing range of 15 to 30 years.

¶ 28 We acknowledge that the court corrected its mistake, but note that the correct information was not given to the respondent until after he had entered his guilty plea on the juvenile portion of the proceedings and the case had already proceeded to the adult portion of the proceedings. After correcting its mistake concerning the sentencing range, the court asked the respondent if he understood, and the respondent indicated that he did. However, the court did not ask the respondent whether he wished to persist in his plea of guilty after hearing the corrected sentencing range. The court also never admonished the respondent that he had a right to persist in a plea of not guilty, which was conceded by the State at oral argument. The court's failure to admonish the respondent that he had a right to persist in a plea of not guilty and failure to question the respondent as to whether he wanted to proceed with his guilty plea resulted in the respondent not being informed that he had a right to withdraw his guilty plea in light of the court's error with regard to the sentencing range.

¶ 29 Also, as part of his sentence for criminal sexual assault, the respondent was

required to serve an indeterminate MSR term of three years to natural life. The MSR term was also not mentioned to the respondent until after he had entered his guilty plea and the case had proceeded to the adult portion of the proceedings. Like the corrected sentencing range admonishment, the respondent was asked if he understood, but he was not asked whether he wished to persist in his guilty plea.

¶ 30 Further, with regard to the jury trial admonishment, the court admonished the respondent that his entry of a guilty plea meant that he would not have a trial before the respondent had entered his guilty plea in the juvenile portion of the proceedings. Thereafter, in the adult portion, the court pointed out that the respondent had not waived his right to a jury trial and asked the respondent's counsel whether counsel had conferred with him concerning the waiver. Counsel responded that he had explained to the respondent that he would be waiving his right to a jury trial if he entered a guilty plea. The court then asked the respondent whether he understood and he responded that he had. Again, this conversation occurred following the entry of the respondent's guilty plea, he was not asked whether he wished to persist in his plea of guilty, and he was not admonished that he had a right to persist in a plea of not guilty. We further note that this conversation occurred with the respondent's counsel and not with the respondent. Also, there was no written jury trial waiver in the record. Based on this record, we conclude that the respondent's postconviction petition has set forth the "gist" of a constitutional claim that his guilty plea was not knowing and voluntary. Accordingly, we reverse the summary dismissal of the respondent's postconviction petition and we remand the case for

20

second-stage proceedings under the Act.

¶ 31   Although we are remanding for second-stage proceedings under the Act, we find it necessary to address the respondent's remaining arguments on appeal with regard to his motion to reconsider sentence, which was a direct appeal following the lifting of the stay on the conditional adult sentence. The respondent argues that he was denied procedural due process when the trial court lifted the stay on his adult sentence because he was not given sufficient notice of the nature of the hearing. Specifically, the respondent argues that he was "entitled to knowledge that the [petition to revoke probation] and subsequent sentencing hearing involved not just his juvenile sentence, but his adult sentence as well." In support of his argument, the respondent noted that the State's petition to revoke probation made no mention of the lifting of the stay on the adult sentence.

¶ 32   Procedural due process claims question the constitutionality of the procedures used to deny a person's life, liberty, or property. *In re M.A.*, 2014 IL App (1st) 132540, ¶ 51. "The hallmarks of procedural due process are notice and the opportunity to be heard." *Id.* However, due process is a flexible concept, such that not all situations that call for procedural safeguards require the same kind of procedure. *Lyon v. Department of Children & Family Services*, 209 Ill. 2d 264, 272 (2004). The procedural safeguards that are required in a particular situation depend on the nature of the government function involved and the private interest that has been affected by governmental action. *Id.* In the present case, the State, again comparing EJJ proceedings with probation-revocation proceedings, acknowledges that the respondent is entitled to due process of law, but

21

argues that only minimum requirements of due process need to be applied. See *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973); *People v. Acevedo*, 216 Ill. App. 3d 195, 200 (1991) ("It is well established that only 'minimum requirements' of due process need be applied at a probation revocation hearing."). These "minimum requirements" include the following: written notice of the claimed probation violation; disclosure to the probationer of the evidence against him; the opportunity to be heard in person and present evidence; and the right to confront and cross-examine witnesses. *People v. Cox*, 197 Ill. App. 3d 239, 243 (1990).

¶ 33   In the present case, the respondent argues that he did not have notice that the conditional adult sentence could be imposed after the court found that he had violated his juvenile probation. He argues that the State was required to file a petition to lift the stay instead of a petition to revoke probation before the stay on the adult sentence could be lifted. In support, he cites *In re J.W.*, 346 Ill. App. 3d 1, 15 (2004), which he argues construed section 5-810(6) of the EJJ statute (705 ILCS 405/5-810(6) (West 2012)) to require the filing of a petition to revoke the stay.

¶ 34   When a respondent is found to have violated the conditions of his juvenile sentence in an EJJ proceeding, the following portion of the EJJ statute applies:

> "When it appears that a minor convicted in an extended jurisdiction juvenile prosecution under subsection (1) has violated the conditions of his or her sentence, or is alleged to have committed a new offense upon the filing of a petition to revoke the stay, the court may, without notice, issue a warrant for the arrest of the

22

minor.  After a hearing, if the court finds by a preponderance of the evidence that the minor committed a new offense, the court *shall* order execution of the previously imposed adult criminal sentence.  After a hearing, if the court finds by a preponderance of the evidence that the minor committed a violation of his or her sentence other than by a new offense, the court *may* order execution of the previously imposed adult criminal sentence or may continue him or her on the existing juvenile sentence with or without modifying or enlarging the conditions." (Emphases added.)  705 ILCS 405/5-810(6) (West 2012).

¶ 35    Looking at the plain language of the statute, the trial court has three options under this statute when a juvenile has been found to have violated probation: (1) execute the previously imposed adult criminal sentence; (2) continue the existing juvenile sentence without change; or (3) continue the juvenile sentence by modifying or enlarging the conditions.  Therefore, the trial judge in this case had only three sentencing options when he found that the respondent had violated his juvenile probation.  The statute does not mandate that a petition to revoke the stay be filed before the stay on the conditional adult sentence can be lifted where a respondent has violated a condition of probation.  The only place in the statute that mentions a petition to revoke the stay is where it discusses the allegation that respondent had committed a new offense, which was not the case here.  Further, we have not found any authority that interprets section 5-810(6) to require the filing of a petition to lift the stay where respondent has violated a condition of probation before the trial court can lift the stay on the conditional adult sentence.  The case cited by

23

the respondent, *J.W.*, 346 Ill. App. 3d at 15, involved an appeal following the initial EJJ proceeding where the juvenile sentence was imposed, not an appeal following the violation of a condition of probation in the EJJ prosecution.

¶ 36    Furthermore, after carefully reviewing this record, we conclude that the respondent was given adequate notice that the conditional adult sentence could be imposed if he violated a condition of his probation.  The case was designated as an EJJ proceeding. During the plea and sentencing hearing, the respondent's counsel addressed the court regarding the function of an EJJ proceeding and indicated that the adult sentence would be stayed unless the respondent violated a condition of probation and if the respondent did violate a condition of probation, he could be sentenced to the adult sentence.  After entering the conditional adult sentence, the court admonished the respondent that execution and issuance of the mittimus would be stayed, but that if he violated a condition of his probation, he would be "going to the Department of Corrections *** for 15 years."

¶ 37    Also, the procedure leading up to the revoking of the respondent's juvenile probation and the imposition of the adult sentence comported with procedural due process.  First, the respondent received written notice of the specified violation of his juvenile probation in that the State filed a petition to revoke probation, alleging that the respondent was noncompliant with counseling services.  The actual revocation of the probation was preceded by a full hearing in open court during which the State presented testimony from Roy concerning this alleged violation, which was subject to cross-examination by the respondent.  The respondent was also given an opportunity to call

24

witnesses and testify on his own behalf, and no evidence was presented. The hearing was presided over by a neutral arbitrator.

¶ 38 During the sentencing hearing, the State requested that the respondent be sentenced to the Department of Juvenile Justice. The respondent's mother testified on his behalf. The respondent was given an opportunity to address the court, and he requested that the court give him another opportunity to complete counseling. The respondent's counsel acknowledged that the court had the discretion to "invoke" the conditional adult sentence because the respondent had violated probation rather than committing a new offense. The State indicated that it was hesitant to request that particular outcome, but acknowledged that it was an option for the court and that it would support that decision. The court then revoked the respondent's juvenile sentence and imposed the 15-year adult sentence. Although we are mindful of the serious consequences that the respondent, a juvenile who has a history of mental illness and an IQ of 84, faces by violating a condition of his juvenile probation within this EJJ prosecution, we cannot conclude, based on this record, that he was not given sufficient notice that the adult sentence could be imposed if he violated a condition of his juvenile probation. Therefore, we affirm the denial of his motion to reconsider.

¶ 39 Next, we turn to the respondent's argument that the trial court incorrectly imposed an MSR period of natural life where the appropriate MSR sentence was an indeterminate term of three years to natural life. The State concedes that an indeterminate MSR term of three years to natural life should have been imposed. Section 5-8-1(d)(4) of the Unified

25

Code of Corrections (730 ILCS 5/5-8-1(d)(4) (West 2012)) provides that the MSR term for the offense of criminal sexual assault "shall range from a minimum of 3 years to a maximum of the natural life of the defendant." In *People v. Rinehart*, 2012 IL 111719, ¶ 30, the supreme court held that in enacting section 5-8-1(d)(4) and its related provisions, the legislature contemplated an indeterminate MSR term for criminal sexual assault, not determinate terms. Therefore, pursuant to our authority under Illinois Supreme Court Rule 615(b) (eff. Jan. 1, 1967), we amend the respondent's mittimus to reflect an indeterminate MSR term of three years to natural life. See *People v. Jackson*, 2012 IL App (1st) 092833, ¶ 52.

¶ 40 Finally, the respondent argues that the mittimus should be corrected to reflect the time he spent in custody from January 31, 2013, until August 29, 2013, and from January 2, 2014, until February 14, 2014. The State agrees. A defendant is entitled to statutory credit for time spent in custody as a result of the offense for which the sentence was imposed. 730 ILCS 5/5-4.5-100(b) (West 2012). This also includes all time spent in home detention, excluding certain circumstances, which do not apply here. 730 ILCS 5/5-4.5-100(b), (d) (West 2012). The statutory right to credit for time served is mandatory and can be raised for the first time on appeal. *People v. Whitmore*, 313 Ill. App. 3d 117, 121 (2000). Therefore, pursuant to our authority under Illinois Supreme Court Rule 615(b) (eff. Jan. 1, 1967), we amend the respondent's mittimus to reflect the 253 days that he spent in custody. See *People v. Blair*, 215 Ill. 2d 427, 456 (2005).

¶ 41 For the reasons stated, the trial court's summary dismissal of the respondent's

postconviction petition is reversed and the cause is remanded for second-stage postconviction proceedings under the Act. The court's denial of the respondent's motion to reconsider the lifting of the stay is affirmed as modified.

¶ 42    Affirmed in part as modified; reversed in part and remanded.

2015 IL App (5th) 140341

NO. 5-14-0341

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| *In re* E.W., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | St. Clair County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 13-JD-22 |
| | ) | |
| E.W., | ) | Honorable |
| | ) | Walter C. Brandon, Jr., |
| Respondent-Appellant). | ) | Judge, presiding. |

---

**Rule 23 Order Filed:** January 26, 2015
**Motion to Publish Granted:** February 23, 2015
**Opinion Filed:** February 23, 2015

---

| | |
|---|---|
| **Justices:** | Honorable Thomas M. Welch, J. |
| | |
| | Honorable Melissa A. Chapman, J., and |
| | Honorable S. Gene Schwarm, J., |
| | Concur |

---

| | |
|---|---|
| **Attorneys for Appellant** | Michael J. Pelletier, State Appellate Defender, Ellen J. Curry, Deputy Defender, Amanda R. Horner, Assistant Appellate Defender, Office of the State Appellate Defender, Fifth Judicial District, 909 Water Tower Circle, Mt. Vernon, IL 62864 |

---

| | |
|---|---|
| **Attorneys for Appellee** | Hon. Brendan F. Kelly, State's Attorney, St. Clair County, 10 Public Square, Belleville, IL 62220; Patrick Delfino, Director, Stephen E. Norris, Deputy Director, Patrick D. Daly, Staff Attorney, Office of the State's Attorneys Appellate Prosecutor, Fifth District Office, 730 E. Illinois Highway 15, Suite 2, P.O. Box 2249, Mt. Vernon, IL 62864 |

---