NOTICE
Decision filed 11/15/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 240025-U

NO. 5-24-0025

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| *In re* TAYVION S., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Vermilion County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 22-JD-13 |
| | ) | |
| Tayvion S., | ) | Honorable |
| | ) | Robert E. McIntire, |
| Respondent-Appellant). | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court.
Presiding Justice Vaughan and Justice Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court substantially complied with Illinois Supreme Court Rule 402A(a) (eff. Nov. 1, 2003) when admonishing the respondent before accepting his admission to the State's amended petition to invoke the previously imposed eight-year adult sentence that had been stayed until the completion of his juvenile probation sentence.

¶ 2    Pursuant to a plea agreement, the Vermilion County circuit court adjudicated the respondent, Tayvion S., delinquent under the extended jurisdiction juvenile (EJJ) prosecutions provision of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/5-810 (West 2020)) and sentenced him to eight years' imprisonment for aggravated discharge of a firearm, subject to a mandatory stay until the completion of his juvenile probation sentence. The stay was eventually lifted when he entered into an admission to invoke the eight-year adult sentence. On

1

appeal, the respondent argues that: (1) the trial court failed to substantially comply with Illinois Supreme Court Rule 402A(a) (eff. Nov. 1, 2003) before accepting his admission to the imposition of the adult sentence, and (2) the court failed to determine whether he understood the requisite Rule 402A(a) admonishments. For the following reasons, we affirm.[1]

¶ 3                               I. BACKGROUND

¶ 4      On March 7, 2022, the State filed a petition for adjudication of wardship against the respondent, who was 16 years old, charging him with one count of aggravated discharge of a firearm, a Class 1 felony; one count of possession of a firearm without a firearm owner's identification card, a Class 3 felony; and one count of aggravated unlawful use of a weapon, a Class 4 felony. The State also filed a petition to designate the proceeding as an EJJ prosecution pursuant to section 5-810 of the Juvenile Court Act (705 ILCS 405/5-810 (West 2020)). After a July 25, 2022, hearing, the trial court designated the case for EJJ prosecution.

¶ 5      On December 5, 2022, the respondent entered into a fully negotiated guilty plea to aggravated discharge of a firearm. In exchange, the State agreed to dismiss the remaining two counts and to a sentence of 36 months' probation under the Juvenile Court Act and an eight-year adult sentence, which would be stayed on the condition that the respondent not violate the conditions of his juvenile sentence. The period of mandatory supervised release (MSR) for his adult sentence was two years.

---

[1]Because this appeal involves a final order from a delinquent minor proceeding arising out of the Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq.* (West 2020)), Illinois Supreme Court Rule 660A(f) (eff. July 1, 2018) requires that, except for good cause shown, the appellate court issue its decision within 150 days of the filing of the notice of appeal. Accordingly, the decision in this case was due on August 26, 2024. However, due to the appellant requesting extensions of time to file his briefs, the case was not ready for disposition until October 7, 2024. Thus, there was good cause for issuing our decision outside the 150-day deadline.

2

¶ 6    Before accepting the plea agreement, the trial court questioned the respondent about his age, his education; and whether he suffered from any disability, was taking any prescribed medication, or was under the influence of drugs or alcohol. The court then read the charges that were alleged in the adjudication petition and explained that the case was designated for EJJ prosecution. The court admonished the respondent that he had a right to trial by a jury or a judge; and at that trial, he had a right to be present, to be represented by an attorney, to hear and challenge the State's evidence, to cross-examine witnesses, to present evidence, to testify if he wished, to review all pertinent court files and other documents related to his case, and to request that the circuit clerk issue subpoenas commanding the appearance at the trial of any witness he wished to testify on his behalf.

¶ 7    The trial court also admonished that, at the trial, the State would be required to prove the allegations against the respondent beyond a reasonable doubt, and if the State failed to satisfy this burden, the charges against him would be dismissed. However, the court admonished that, if the State proved him guilty beyond a reasonable doubt, he would receive a sentence both under the Juvenile Court Act and the adult criminal code. The court advised him of the minimum and maximum penalties for each offense under the Juvenile Court Act and the adult criminal code. The court then asked the respondent whether he had any questions as to the admonishments, to which the respondent said no, and confirmed that he had reached an admission agreement with the State. The court next admonished him that, if he entered into the admission agreement, he would be giving up his trial rights. Specifically, the court admonished that he would give up his right to a trial, to hear and challenge the State's evidence, to present his own evidence, and to require the State to prove him guilty beyond a reasonable doubt. The court asked the respondent if he

3

understood the trial rights that he was giving up by entering into an admission agreement, and he responded that he did.

¶ 8    The trial court then explained the terms of the parties' agreement, including the sentence that would be imposed, and that the respondent's eight-year adult sentence would be stayed pending his successful completion of the juvenile sentence. The court noted that, if the juvenile sentence was completed, then the respondent would never serve the adult sentence. However, if he violated the terms of his juvenile probation, the State filed a petition to invoke the adult sentence, and the court found that he had violated his juvenile probation, then he would have to serve the adult sentence. The court questioned whether the respondent understood the terms of the agreement, and the respondent indicated that he did and that he had no questions about the agreement.

¶ 9    The trial court next questioned the respondent to determine whether he was entering into the agreement freely and voluntarily and whether he had sufficient time to speak with his attorney and his mother about the agreement. The State then read the factual basis, which the court found was sufficient to support the aggravated discharge of a firearm charge. Thereafter, the court accepted the respondent's admission, finding that the admission was freely, voluntarily, and knowingly made; entered judgment on the aggravated discharge of a firearm charge; and dismissed the remaining counts.

¶ 10    On January 3, 2023, after a hearing, the trial court sentenced the respondent to a juvenile sentence of 36 months' probation pursuant to the negotiated admission of guilt. His juvenile probation conditions included the following, in pertinent parts: (1) that he not violate any laws or ordinances of any jurisdiction; (2) that he not have any contact with anyone on probation,

supervision, conditional discharge, MSR, or involved with pending criminal charges; and (3) that he not have contact with, *inter alia*, Atron J. and Darell W.

¶ 11    The respondent was also sentenced to an adult sentence of eight years' imprisonment followed by a two-year period of MSR, which was stayed pending compliance with the conditions of his juvenile probation. During the dispositional hearing, the trial court asked the attorneys whether the adult sentence was a "15 percent," to which both of the attorneys indicated that they did not know, and then the court asked whether it was an "85 percent sentence." After a brief pause in the hearing, the court stated, "On a 15 percent basis. He's entitled to 212 days credit being March 7, 2022, through October 4, 2022."

¶ 12    On January 10, 2023, the State filed a petition for revocation of probation, arguing that the respondent violated the conditions of his juvenile probation by being in contact with a prohibited person. The State also filed a petition to invoke the adult sentence pursuant to section 5-810(6) of the Juvenile Court Act (705 ILCS 405/5-810(6) (West 2020)). At the February 21, 2023, hearing, the State advised that the respondent was making strides to improve his situation and requested that the case be set for status in 30 days to see how the respondent progressed. The trial court agreed to continue the matter. However, later that same day, the respondent was arrested for criminal trespass to real property while in the company of three individuals with whom he was ordered to have no contact. Consequently, on February 24, 2023, the State filed an amended petition to invoke the adult sentence, which reiterated the allegation in the initial petition about the respondent having contact with a prohibited person. The petition also included the allegation that the respondent violated his probation by committing the offense of criminal trespass to real property and by being arrested with three people with whom he was ordered to have no contact. The State also filed an amended petition to revoke the respondent's probation.

5

¶ 13   At a July 24, 2023, hearing, the respondent's counsel indicated that the parties had agreed that the respondent would admit to the amended petition to invoke the adult sentence, and in exchange, the State would dismiss the misdemeanor criminal trespass to real property charge. Counsel explained that as the respondent would turn 18 in August, it was imperative that he get into the Department of Juvenile Justice as soon as possible. Counsel also indicated that she had multiple discussions with the respondent and his mother regarding the situation, and they agreed to proceed pursuant to the parties' agreement.

¶ 14   The trial court then addressed the respondent to confirm that he was not under the influence of any drugs or medication and could read and write. The court next questioned the respondent to determine whether he understood the nature of the agreement and was aware that he would be sentenced to eight years' imprisonment. The court read the allegations in the amended petition, and the respondent indicated that he understood them. The court admonished him that he had the right to continue denying the allegations, and that if he did, the State would be required to prove them by a preponderance of the evidence during a hearing on the petition. The court admonished him that, at the hearing, witnesses would testify under oath, and the respondent would have the right to be present, to hear and see the witnesses testifying, to counsel, to cross-examine any witnesses to test their recollection and truthfulness, to call witnesses on his behalf, and to have the court issue subpoenas compelling witnesses to testify.

¶ 15   The trial court advised that, if the State did not sustain its burden, then that would be the end of the matter. However, if the State sustained its burden on one or more of the allegations, then there were two things that could happen. If the State proved the allegations relating to the no-contact conditions, then the matter would be set for a dispositional hearing where the court would have the option to sentence him to the eight-year adult sentence previously imposed or "some other

penalty available under the Juvenile Court Act," which could include a prison sentence, release into the community under conditions of good conduct on further probation, or local confinement in the county jail. However, if the State proved by a preponderance of the evidence the new charge of criminal trespass to real property, the court would have no choice but to impose the eight-year adult sentence that was previously stayed. The court then asked the respondent if he understood how that worked, and the respondent said that he did.

¶ 16     The trial court then admonished the respondent that he would have the right to testify at any hearing on the amended petition. The court also admonished him that he would have the right not to testify about any alleged criminal conduct that he had a reasonable fear of prosecution. The court asked him whether he understood how that worked, and he responded that he did. The court then indicated that it had explained how the hearing would be conducted because it wanted the respondent to understand that, if he persisted in the agreement, there would be no hearing to determine whether he violated the terms of his probation, the State would be relieved of its burden of proof, and the only thing left to do would be to impose the sentence. The court asked the respondent whether he understood, and the respondent again indicated that he did.

¶ 17     The trial court questioned the respondent to determine whether his plea was freely and voluntarily made. When the court asked him whether this was something he wanted the court to accept, he responded, "No, sir." However, he then asked whether the question could be asked again, and when the court asked him if the plea agreement was something that he wanted the court to accept, he said, "Yes, sir." At that point, the court told the respondent to interrupt and ask his counsel any questions he had if he did not understand what was being said or asked of him. The State then read the factual basis, which the court found was sufficient to support the allegations

7

relating to the criminal trespass to real property. The court accepted the respondent's admission to criminal trespass to real property and found that it was knowingly and voluntarily made.

¶ 18    The trial court then proceeded to the sentencing hearing. During the sentencing portion of the hearing, the respondent's counsel indicated that she wanted to make sure that the record was clear that it was "at 85 percent." The court responded that the original charge was aggravated discharge of a firearm at an occupied vehicle and that the statute provided that the sentence was to be "served at 85 percent." The respondent's counsel then asked for a brief moment to confer with the respondent and his mother, which was allowed. After a discussion off the record with the respondent and his mother, the respondent's counsel indicated that she had just "needed to go back with [her] client on a couple of things to make sure that his mom was aware." The proceedings then resumed, and the court imposed the eight-year adult sentence in the Illinois Department of Corrections, which had previously been stayed. The court added that the sentence would be served at "essentially 15 percent credit for good behavior" and would be followed by a two-year period of MSR. The respondent was then granted leave to file a late notice of appeal on March 28, 2024.

¶ 19                                II. ANALYSIS

¶ 20    On appeal, the respondent challenges the trial court's acceptance of his admission on the basis that the court did not substantially comply with Illinois Supreme Court Rule 402A(a) (eff. Nov. 1, 2003). First, he argues that the court failed to admonish him that the sentencing range for the underlying offense of aggravated discharge of a firearm was 4 to 15 years' imprisonment.

¶ 21    A probationer is entitled to the minimum requirements of due process at a revocation hearing. *People v. Harris*, 392 Ill. App. 3d 503, 508 (2009). Generally, the rules and requirements of probation revocation hearings are similar to those for guilty plea hearings. *Id.* at 507. Illinois Supreme Court Rule 402A(a) (eff. Nov. 1, 2003) provides admonitions that must be given before

8

a court can accept an admission to a probation violation. The goal of the Rule 402A admonitions is to make sure that respondent understands his admission, the rights he is waiving, and the potential consequences of his admission. *Harris*, 392 Ill. App. 3d at 508. Minors in delinquency cases are entitled to the same due process protections as adults who face criminal charges. *In re Westley A.F.*, 399 Ill. App. 3d 791, 795 (2010). Thus, because an adult must be admonished under Rule 402A(a) before his probation may be revoked, a minor is also entitled to such admonishments. *Id.* Also, the EJJ procedure is substantially similar to the procedure followed for the revocation of probation. *In re E.W.*, 2015 IL App (5th) 140341, ¶ 20.

¶ 22    Specifically, Rule 402A(a) requires the trial court to address respondent personally in open court to inform him of the following and ensure he understands:

> "(1) the specific allegations in the petition to revoke probation, conditional discharge or supervision;
> (2) that the defendant has the right to a hearing with defense counsel present, and the right to appointed counsel if the defendant is indigent and the underlying offense is punishable by imprisonment;
> (3) that at the hearing, the defendant has the right to confront and cross-examine adverse witnesses and to present witnesses and evidence in his or her behalf;
> (4) that at the hearing, the State must prove the alleged violation by a preponderance of the evidence;
> (5) that by admitting to a violation, or by stipulating that the evidence is sufficient to revoke, there will not be a hearing on the petition to revoke probation, conditional discharge or supervision, so that by admitting to a violation, or by stipulating that the evidence is sufficient to revoke, the defendant waives the right to a hearing and the right to confront and cross-examine adverse witnesses, and the right to present witnesses and evidence in his or her behalf; and
> (6) the sentencing range for the underlying offense for which the defendant is on probation, conditional discharge or supervision." Ill. S. Ct. R. 402A(a) (eff. Nov. 1, 2003).

¶ 23    By its own terms, Rule 402A requires only substantial compliance, and substantial compliance is sufficient to satisfy due process. Ill. S. Ct. R. 402A (eff. Nov. 1, 2003); *In re Westley A.F.*, 399 Ill. App. 3d at 796. Substantial compliance is an affirmative showing in the record that respondent understood each of the required admonitions. *People v. Ellis*, 375 Ill. App. 3d 1041,

9

1046 (2007). Substantial compliance is achieved in ways other than reciting all of Rule 402A to a respondent when respondent admits to violating probation. *In re Westley A.F.*, 399 Ill. App. 3d at 796.

¶ 24 When determining whether there was substantial compliance, courts consider the entire record, which includes what transpired at earlier proceedings, to determine whether respondent understood the admonishments set out in Rule 402A(a). *Id.*; *People v. Dennis*, 354 Ill. App. 3d 491, 496 (2004). The inquiry is whether an ordinary person in respondent's position would have understood the rights being waived by entering into an admission. *Dennis*, 354 Ill. App. 3d at 496. Each case is considered on its own unique facts with the main focus being on the length of time between the admonishments and the admission to violating probation. *In re Westley A.F.*, 399 Ill. App. 3d at 796. The trial court's compliance with Rule 402A is subject to *de novo* review. *Id.*

¶ 25 In the prosecution of adults and non-EJJ cases involving minor children, when the trial court finds that a probationer has violated the terms of his previously imposed probation, the court generally has discretion to continue the probationer on the existing sentence, with or without modifying or enlarging the conditions, or choose from among the full range of sentences available for the original offense. See 730 ILCS 5/5-6-4(e), 5-4.5-15 (West 2020); 705 ILCS 405/5-710, 5-720(4) (West 2020). Thus, in these cases, an admission to a probation violation results in the court having discretion to choose from among a range of available penalties, and due process requires that probationer understand the available sentencing range that will apply if he admits to the violation. See *In re Westley A.F.*, 399 Ill. App. 3d at 796-97; *People v. Curry*, 2019 IL App (3d) 160783, ¶ 23; *People v. Bailey*, 2021 IL App (1st) 190439, ¶¶ 17, 27-29. Rule 402A(a)(6) protects due process by ensuring that probationer understands the potential consequences of his admission.

10

*In re Westley A.F.*, 399 Ill. App. 3d at 796-97. However, the case here involves an EJJ prosecution, which operates differently than a non-EJJ prosecution.

¶ 26    Section 5-810(1)(a) of the Juvenile Court Act allows the State to file a petition to designate a proceeding as an EJJ prosecution when a juvenile has been charged with an offense that would be a felony if committed by an adult. 705 ILCS 405/5-810(1)(a) (West 2020). In an EJJ prosecution, if the minor is found guilty, the circuit court must impose both a juvenile sentence and an adult sentence, and must stay the adult sentence with the condition that the minor not violate the terms of the juvenile sentence. *In re E.W.*, 2015 IL App (5th) 140341, ¶ 5; 705 ILCS 405/5-810(4) (West 2020). If the juvenile successfully completes the juvenile sentence, the court vacates the adult criminal sentence. 705 ILCS 405/5-810(7) (West 2020).

¶ 27    However, if the trial court finds, by a preponderance of the evidence, that the minor committed a new offense, the court must order the execution of the previously imposed adult criminal sentence. *Id.* § 5-810(6). If the court finds, by a preponderance of the evidence, that the minor has committed a violation of the minor's sentence other than by a new offense, the court may order execution of the previously imposed adult criminal sentence or may continue the minor on the existing juvenile sentence with or without modifying or enlarging the conditions. *Id.*

¶ 28    In this case, the State's amended petitions to revoke the respondent's juvenile probation and to invoke the adult sentence alleged both that the respondent committed a new offense, *i.e.*, criminal trespass to real property, and also committed a violation of his sentence other than by a new offense, *i.e.*, by having contact with prohibited persons. The respondent, however, agreed to an admission to criminal trespass to real property and the imposition of the eight-year adult sentence. Thus, the court, accepting the respondent's admission, imposed the previously agreed-upon eight-year adult sentence.

11

¶ 29    If the respondent had not admitted to a violation of his probation but was found to have committed the new offense, the trial court, without any discretion, would have been required to order the execution of the previously imposed adult criminal sentence. Alternatively, if the respondent had not admitted to a violation of his probation but was found to have violated his probation other than by committing a new offense, the court would have had discretion to impose the previously decided adult criminal sentence or to continue the existing juvenile sentence (with or without modifying or enlarging the conditions). Under either scenario, the sentencing range applicable to the original offense of aggravated discharge of a firearm would not apply. In other words, the trial court would not have had discretion to sentence the respondent to between 4 and 15 years' imprisonment, which was the applicable sentencing range for aggravated discharge of a firearm.

¶ 30    Although the respondent concedes that his eight-year sentence was a guaranteed sentence following his admission, he argues that, without knowing where in the sentencing range his guaranteed sentence landed, he was unable to make a knowing admission. However, as explained above, it would have been legally and factually incorrect for the trial court to admonish him as to the sentencing range for aggravated discharge of a firearm since that sentencing range no longer applied to him. Instead, the time for the respondent to be admonished about the possible penalties for aggravated discharge of a firearm (his original offense) was when he entered into the fully negotiated guilty plea on December 5, 2022, which resulted in him being sentenced to juvenile probation and the stayed eight-year adult sentence. The respondent does not argue that he was not properly admonished at that time; in fact, the record demonstrates that he was admonished in accordance with Rule 402A(a) before he entered into that admission.

¶ 31    Moreover, the record also reveals that, before the respondent admitted to criminal trespass to real property and the imposition of the eight-year adult sentence, he was admonished consistently with section 5-810(6) of the Juvenile Court Act (705 ILCS 405/5-810(6) (West 2020)) about the possible penalties if he did not enter into the admission. By admonishing the respondent consistently with section 5-810(6), the trial court ensured that the respondent understood the consequences of admitting to the State's amended petition and complied with the purposes of Rule 402A(a)(6). Thus, we conclude that the respondent was admonished about and understood the applicable sentencing range at the time that he admitted to the allegations in the State's amended petition to invoke the adult sentence.

¶ 32    The respondent next argues that the trial court did not substantially comply with Rule 402A(a)(5) because, although the court advised him that he would be foregoing his right to a hearing if he persisted in his plea, the court did not advise him that he would be waiving his rights to confront and cross-examine adverse witnesses and to present his own witnesses and evidence. We disagree.

¶ 33    Prior to accepting the respondent's admission to the State's amended petition to invoke his adult sentence, the trial court read the allegations in the amended petition to the respondent and ensured that he understood them. The court admonished him that he had the right to deny the allegations, and that if he did, the State would have to prove them by a preponderance of the evidence during a hearing on the amended petition. The court also admonished that, at the hearing, witnesses would testify under oath, and he would have the right to be present, to hear and see the witnesses testifying, to counsel, to cross-examine any witnesses to test their recollection and truthfulness, to call witnesses on his behalf, and to have the court issue subpoenas compelling witnesses to testify. The court then advised about the potential sentences he faced if the State

13

sustained its burden. At this point, the court asked the respondent if he understood how that worked, and he indicated that he did. The court then admonished him that he would have a right to testify at any hearing on the amended petition.

¶ 34    Thereafter, the trial court stated that it wanted the respondent to understand how the hearing would be conducted because if he persisted in his plea, there would be no hearing to determine whether he had violated the terms of his probation, the State would be relieved of its burden, and the only thing left to do would be to impose the sentence. The court asked the respondent whether he understood, and the respondent indicated that he did. Thus, the respondent was admonished regarding his right to a hearing and the rights that he would have had at such a hearing, which included those rights to confront and cross-examine adverse witnesses and to present witnesses and evidence on his own behalf, and then immediately after, in that same hearing, the respondent was told that there would be no hearing if he persisted in his plea. Considering the totality of the circumstances, an ordinary person in the respondent's position would have understood that, by waiving his right to a hearing, he would also be waiving the rights that he was told that he would have had at such a hearing. The trial court was not required to admonish him verbatim, although that would have been preferable. Instead, only substantial compliance with Rule 402A is required, and we conclude that the trial court substantially complied with the Rule 402A(a)(5) admonishment.

¶ 35    The respondent further argues that the trial court failed to confirm that he understood each of the Rule 402A(a) admonishments. The respondent notes that, instead of individually confirming his understanding of each admonishment, the court grouped the Rule 402A(a) admonishments all together and then admonished him about the potential sentences before asking whether he understood. He argues that, because all of the admonishments were grouped together, it was

14

unclear whether he understood all of the admonishments or just the admonishments concerning the potential penalties that immediately preceded the court's question asking if he understood.

¶ 36    The record as a whole indicates that the trial court accurately and carefully admonished the respondent consistent with Rule 402A(a), and the court's question following these admonishments about whether the respondent understood "how that works" was not limited to assessing his understanding of the potential penalties. In addition, the court stated that it had explained how the hearing worked because it wanted the respondent to understand that, by persisting in his plea, he was waiving his right to have a hearing to determine whether he violated his probation, which, as we noted above, would indicate that he was also waiving the rights he would have had during such a hearing. After this explanation, the court again asked whether the respondent understood, and he indicated that he did. Thus, the record as a whole affirmatively shows that the respondent understood the Rule 402A(a) admonishments.

¶ 37    Furthermore, we note that, even after the trial court told the respondent that, if he did not understand any of the questions, to interrupt and ask his counsel for clarification, he did not express any confusion with the admonishments that were given. We also note that the record reflects that the respondent was able and willing to request clarification if he did not understand any of the given admonishments.

¶ 38    Lastly, the respondent argues that his admission may have been based on faulty information or a misunderstanding relating to whether he would serve 85% of his adult prison sentence as he was told different and confusing information about truth-in-sentencing. Specifically, during the January 3, 2023, hearing, the trial court asked counsel whether the sentence was a "15 percent sentence" or an "85 percent sentence." There was then a brief pause in the proceedings, after which the court indicated that the sentence was "[o]n a 15 percent basis." Then, subsequently, at the July

15

24, 2023, hearing, the respondent's counsel requested clarification about whether it was an "85 percent" sentence. In response, the court confirmed that the sentence was to be "served at 85 percent." However, in the written dispositional order of probation, which the respondent had signed, it was noted that he would serve eight years on a "day for day basis." The respondent indicates that he was never told what it meant to be given an "85 percent" sentence, and the "day for day" language in the dispositional order was confusing.

¶ 39    First, Rule 402A(a) does not require the trial court to admonish a respondent about the applicable truth-in-sentencing statute or ensure that a respondent understands it. Additionally, a defendant need not be admonished about the collateral consequences of entering into a guilty plea, which would include any effect of the truth-in-sentencing statute. See *People v. Frison*, 365 Ill. App. 3d 932, 934-36 (2006). Thus, we conclude that the trial court here was not required to admonish the respondent about any applicable truth-in-sentencing statute.

¶ 40    The respondent concedes that Rule 402A(a) does not require a trial court to admonish a respondent about the applicable truth-in-sentencing statute or ensure that it is understood. However, the respondent argues that, once a court has provided incorrect information about the truth-in-sentencing statute, it has a duty to correct that misinformation. The respondent notes that he was told that his sentence would be served at 85%. Then, at the bottom of the written dispositional order of probation filed January 6, 2023, in bolded capital letters, it indicated that, "IF CHECKED, THE FOLLOWING PROVISIONS APPLY." Immediately under that sentence was an unchecked box, and the sentence, "EJJP, 8 years, day for day basis, stayed pending compliance with the terms and conditions of this Probation Order." Since the box next to this sentence was not checked, it appears that provision did not apply.

¶ 41    However, even if the respondent was provided confusing information on the dispositional order, it was made clear at the January 3 and July 24 hearings that the adult sentence would be served at "85 percent." Thus, the correct information was given at the January 3 hearing, and any misinformation was subsequently corrected at the July 24 hearing. Further, we note that, at the hearing where the respondent admitted to the State's petition to invoke his adult sentence, defense counsel sought and received leave to consult with the respondent and his mother immediately after the trial court confirmed that his sentence would be served at 85%. After consulting with them, counsel indicated that she was ready to proceed with sentencing without raising any issue concerning the respondent's understanding of the application of the truth-in-sentencing statute. Thus, we find that, if any misinformation was given to the respondent about the applicable truth-in-sentencing statute, it was corrected, and the record demonstrates that the respondent understood that he would serve 85% of his adult prison sentence. Accordingly, we conclude that the record establishes that the trial court substantially complied with Rule 402A.

¶ 42                                    III. CONCLUSION

¶ 43    For the foregoing reasons, the judgment of the circuit court of Vermilion County is hereby affirmed.

¶ 44    Affirmed.

17