2023 IL App (1st) 211006

FOURTH DIVISION
Order filed: April 13, 2023

Nos. 1-21-1006, 1-21-1007, 1-21-1008, 1-21-1009,
1-21-1010, 1-21-1011, 1-21-1012, 1-21-1013 (cons.)

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | |
|---|---|
| *In re* D.W., a minor, | ) Appeal from the |
| | ) Circuit Court of |
| (The People of the State of Illinois, | ) Cook County. |
| | ) |
| Petitioner-Appellee, | ) Nos. 18 JD 925, 18 JD 926, 18 JD |
| | ) 927, 18 JD 928, 18 JD 929, |
| v. | ) 18 JD 1163, 18 JD 1174, 18 JD |
| | ) 1175 |
| D.W., | ) |
| | ) Honorable |
| Respondent-Appellant). | ) Terrence V. Sharkey, |
| | ) Judge, presiding. |

JUSTICE HOFFMAN delivered the judgment of the court, with opinion.
Presiding Justice Lampkin and Justice Rochford concurred in the judgment and opinion.

**OPINION**

¶ 1    In this consolidated appeal, the respondent, D.W., appeals circuit court judgments revoking

the stays of adult sentences in eight separate extended juvenile jurisdiction (EJJ) proceedings. The

respondent asserts that the judgments must be vacated because the hearing on the State's petitions

to revoke the stays was conducted in his absence without the court having given him *in absentia*

admonishments and without the State having provided him with sufficient notice of the hearing.

Nos. 1-21-1006, 1-21-1007, 1-21-1008, 1-21-1009,
1-21-1010, 1-21-1011, 1-21-1012, 1-21-1013 (cons.)

The respondent also contests the evidentiary support for the court's determination that he committed a new offense warranting the revocation of the stays of his adult sentences. We agree with the respondent in part and conclude that, for five of the eight cases at issue, the lack of *in absentia* admonishments requires vacation of the respondent's sentences. However, for the remaining three cases in which he was properly admonished, we find that notice was sufficient and that the court's finding that the respondent committed a new offense was not against the manifest weight of the evidence. Accordingly, we affirm the other three sentences.

¶ 2     In June and July 2018, the State filed eleven petitions for adjudication of wardship charging the respondent with a variety of offenses. Eight of those are relevant to this appeal, and they included the following charges: one count of Class X aggravated vehicular hijacking (18JD925), two counts of Class X armed robbery (18JD926 & 18JD929), and five counts of Class 2 possession of a stolen motor vehicle (PSMV) (18JD927, 18JD928, 18JD1163, 18JD1174, & 18JD1175). The respondent was seventeen years old at the time of these offenses. The parties agree that at his arraignments on these charges the respondent received admonishments that he could be tried *in absentia* only in cases 18JD1163, 18JD1174, and 18JD1175. The respondent did not receive *in absentia* admonishments when he was arraigned in cases 18JD925, 18JD926, 18JD927, 18JD928, and18JD929.

¶ 3     On a motion from the State, the prosecutions of each of these cases were designated EJJ proceedings under section 5-810 of the Juvenile Court Act ("the Act") (705 ILCS 405/5-810 (West 2018)). In October 2019, the parties reached a plea agreement under which the respondent would plead guilty to the top offense in each of the eight cases in exchange for a juvenile sentence of commitment to the Illinois Department of Juvenile Justice (IDJJ) for a period not to exceed his

21st birthday and an adult sentence of fifteen years in prison for case 18JD929, which would be stayed pending the respondent's compliance with the conditions of his juvenile sentence. Under the plea agreement, the remaining seven cases would result in a "finding to stand," case closed. The circuit court accepted the respondent's guilty pleas and later held a sentencing hearing in December 2019, following which the court sentenced the respondent in all eight cases to commitment to IDJJ for a period not to exceed his 21st birthday. For the conditional adult sentences, the court found that the State's recommendation of fifteen years was not enough to respect the harm to the victims, so it set the adult sentences as twenty-one years in prison for each of the three Class X cases, of which the court noted the respondent would need to serve 85 percent, and three years in prison for each of the five Class 2 cases, with all eight sentences running concurrently. The court explained to the respondent that the adult sentences would be stayed and would not take effect unless he committed a new offense or otherwise violated the conditions of his juvenile sentences.

¶ 4     The respondent was released from IDJJ in January 2020 and was then due to serve a one-and-a-half-year aftercare term expiring in July 2021. However, in October 2020, the respondent was arrested and charged with a new PSMV offense. Accordingly, in March 2021, in each of the respondent's eight cases the State filed a petition to revoke the stay of the respondent's adult sentence. When the respondent failed to appear for a hearing on the petitions, the court issued a warrant for the respondent's arrest.

¶ 5     At the next hearing on the matter, the respondent's counsel objected to the case proceeding *in absentia* as a violation of the respondent's right to due process. The court continued the matter to allow the State to attempt to locate and serve the respondent with notice of the proceeding. At

the subsequent evidentiary hearing on the State's petitions, the respondent again did not appear. The State informed the court that it had attempted to serve summonses for all eight cases on the respondent, the respondent's parents, and the respondent's sister, and was only able to complete service on the respondent's father. The State averred that it then provided notice to all parties via publication in the newspaper. Based on those efforts on the part of the State, the court found that service was complete, and the respondent's counsel stated that he had no objection to that finding.

¶ 6    Although the respondent's counsel did not object to the court's finding that notice had been accomplished, counsel did renew his objection to the matter proceeding *in absentia*. Counsel pointed out that the respondent had not received *in absentia* admonishments in five of the eight cases at issue and that the respondent had a due process right to be present at the evidentiary hearing on the State's petitions. Counsel further argued that, based on the discovery that he had received, he had concerns about the respondent's fitness for prosecution and that because of the respondent's absence he was unable to evaluate the respondent to make a determination about the respondent's fitness. The State replied that the respondent had been admonished several times in several different cases that he could be tried *in absentia*. Therefore, the State contended, even if the admonishment had not been given in each case individually, the respondent was generally aware that he could be tried *in absentia*.

¶ 7    After hearing the arguments of the parties, the court ruled that the proceeding could continue with the respondent *in absentia*. The court reasoned that, while a respondent must be admonished that *a trial* can proceed in his or her absence, the hearing on the State's petitions is not a trial. Rather, the court characterized the proceeding as "a ministerial matter of whether or not I have the ability to lift the stay of mittimus. I deny the Defense's motion and I believe I do have

the ability to ministerially manage my case and ministerially if I want to do it before his 21st birthday, I think I have the right to do it." The court then proceeded to take testimony on the State's petitions, specifically on the question of whether the State could show by a preponderance of the evidence that the respondent had committed a new PSMV offense.

¶ 8        Officer Efrain Carreno testified that on the evening of October 17, 2020, he and two other officers were on patrol when they observed a black sedan driving without its headlights on. One of Carreno's partners ran the sedan's plate and the partner informed Carreno that the vehicle had been reported stolen. Defense counsel objected to the testimony concerning the sedan being stolen on the grounds that it was hearsay, but the court overruled the objection on the basis that the information was not offered for the truth of the matter but rather as a course of investigation.

¶ 9        Carreno explained that he notified dispatch of the location of the reportedly stolen sedan and then continued to follow it. While following the vehicle, an Audi SUV that had been in front of the black sedan "jerked" out to the side and let the sedan past, before pulling back behind the sedan. The Audi and the sedan soon stopped on the side of the road, at which point Carreno noticed that the Audi appeared to be reversing. As Carreno positioned his vehicle behind the Audi, the driver of the Audi got out of the vehicle while it was still in reverse. The then-driverless Audi continued reversing and eventually hit the front of Carreno's vehicle. Carreno then saw the driver of the Audi look back at him before getting into the passenger side of the black sedan, which then drove away. Carreno was able to see the driver's face, and the driver was wearing a distinctive hooded jacket with white fur around the hood.

¶ 10      Carreno testified that his vehicle was then blocked by the Audi, which was still in reverse. According to Carreno, the Audi did not have any license plates and had the type of "wrapping"

that new cars have when they are being transported between a factory and a dealership. Defense counsel objected to the characterization of the type and purpose of the wrapping as speculation, and the court sustained the objection, ruling that "[i]t had wrapping on it, but I'll leave it at that."

¶ 11     A few minutes later, Carreno received a call over the radio that the black sedan had hit another vehicle. When Carreno and his partners arrived at the scene of the crash, he saw that a person whom he recognized as the driver of the Audi was in custody. According to Carreno, the driver stated, "something in my jacket." Carreno located the driver's jacket on the ground nearby, and the driver confirmed that the jacket was his. The jacket was eventually returned to the police precinct for processing, where, with Carreno present, another officer discovered what Carreno described as a "key fob to an Audi -- to a sedan. I can't recall the make of it, but he recovered a key fob from one of the pockets of the jacket." Carreno also testified that after processing and impounding the Audi SUV, he observed the vehicle identification number (VIN) to be WA1ENAFY1L2118653.

¶ 12     Carreno testified that while processing the driver of the Audi he learned that the driver had the same name and "IR number" as the respondent. The circuit court at this point also took judicial notice of the fact that the person depicted in the driver's booking photo was the same person whom the circuit court knew from prior court appearances to be the respondent.

¶ 13     Next to testify was Christopher Bard, general manager of Audi of Orland Park. Bard testified that on October 16 or 17, 2020, a shipment of new vehicles arrived at his dealership. The driver of the truck transporting the vehicles informed Bard that one of the vehicles had been damaged. Bard then inspected the vehicles on the truck and observed that a gray Audi Q5 SUV appeared to be damaged in several areas of the rear of the vehicle. Bard confirmed that new

vehicles arriving at the dealership typically have protective wrapping, and Bard testified that there was still some wrapping on the damaged SUV.

¶ 14     The State then asked Bard if he knew what had happened to the damaged vehicle, to which Bard responded that the transport truck driver told him that the vehicle had been stolen from the truck and had been recovered by police. The transport driver provided Bard with a copy of a police report regarding the alleged theft. The respondent's counsel objected to Bard's testimony on this subject as hearsay, to which the State responded that the testimony was not being used for the truth of the matter asserted. Although the State did not offer another basis for the testimony, the court overruled the respondent's objection. Bard then confirmed that the police report that the transport driver gave him listed the VIN for the allegedly stolen vehicle as WA1ENAFY1L2118653. Bard testified that he had not given anyone permission to possess the vehicle in question, that only Audi USA has the authority to grant such permission, and that the transport company was the only person or entity entitled to possess the vehicle during transport to the dealership. The State then rested its case, at which point the respondent moved to dismiss the State's petitions. The court denied the respondent's motion, and the respondent then rested without presenting evidence.

¶ 15     Following argument from the parties, during which the respondent contended that the State failed to prove that the vehicle in question was stolen because the State did not present testimony from anyone at the transport company regarding who had permission to possess the vehicle, the court found that the State had proven that the respondent had committed a new PSMV offense. The court explained its ruling as follows:

    "I don't need to be a rocket scientist to figure out that an individual that abandons a car and

        moves it in the direction of a squad car and flees the scene in a -- a -- another vehicle knew

that this vehicle was stolen. Forget that it was a brand-new Audi. Forget anything else. He -- he abandoned that vehicle to hit the squad car, and he took off.

\*\*\*

But getting out of that vehicle, \*\*\* forget that they didn't put on the driver of the vehicle, that we didn't know when -- the time and place that it was stolen. I don't think the State is required, especially in a preponderance of the evidence standard, to have to prove that this individual driving the vehicle knew of the vehicle to be stolen. I'm telling you he knew that vehicle to be stolen when he backed it up into the squad car, got out, let the vehicle hit -- hit the squad car, and then took off in another vehicle and was arrested."

¶ 16    Accordingly, the circuit court ordered that all of the previously stayed 21-year and 3-year sentences be executed. The respondent then filed eight separate appeals, one for each of the eight cases in which an adult sentence was imposed. We have consolidated those appeals and address them together in this opinion.

¶ 17    The respondent raises what we view as five issues in this appeal. He first raises two arguments that his right to due process was violated when the court held the evidentiary hearing on the State's petitions to revoke the stays of his adult sentences (1) without having provided him with proper notice of the petitions and (2) without having admonished him in each of his eight cases that he could be tried *in absentia*. The respondent then raises two arguments concerning evidentiary issues, specifically (3) that the State failed to prove that he committed a new PSMV offense and (4) that the court improperly relied on inadmissible hearsay in reaching its decision on that matter. Lastly, the respondent argues (5) that the court erred when it stated that he would have

to serve 85 percent, rather than 50 percent, of his 21-year sentence for aggravated vehicular hijacking.

¶ 18    We find merit in the respondent's second issue and vacate five of his eight sentences on the grounds that he was not properly admonished that he could be tried *in absentia*. However, we see no merit to issues one, three, and four, and issue five is rendered moot by our resolution of issue two.

¶ 19    First, the respondent claims that the circuit court failed to comply with statutory requirements and violated his right to procedural due process when it revoked the stay of his adult sentences without providing him with sufficient notice. In support of this argument, the respondent points to section 5-625 of the Act, titled "Absence of minor," which states:

> (1) When a minor after arrest and an initial court appearance for a felony, fails to appear for trial, at the request of the State and after the State has affirmatively proven through substantial evidence that the minor is willfully avoiding trial, the court may commence trial in the absence of the minor. The absent minor must be represented by retained or appointed counsel. If trial had previously commenced in the presence of the minor and the minor willfully absents himself for 2 successive court days, the court shall proceed to trial. All procedural rights guaranteed by the United States Constitution, Constitution of the State of Illinois, statutes of the State of Illinois, and rules of court shall apply to the proceedings the same as if the minor were present in court. The court may set the case for a trial which may be conducted under this Section despite the failure of the minor to appear at the hearing at which the trial date is set. *When the trial date is set the clerk shall send to the minor, by certified mail at his or her last known address, notice of the new date which has been set*

*for trial. The notification shall be required when the minor was not personally present in open court at the time when the case was set for trial.*" (Emphasis added.) 705 ILCS 405/5-625(1) (West 2020).

¶ 20    Although caselaw interpreting this section of the Act is virtually nonexistent, the respondent points out that the language at the end of subsection (1) regarding notice by certified mail is substantially similar to language used in the section's adult counterpart in the Code of Criminal Procedure (see 725 ILCS 5/115-4.1(a) (West 2020) ("When such trial date is set the clerk shall send to the defendant, by certified mail at his last known address indicated on his bond slip, notice of the new date which has been set for trial.")). Given that similarity, the respondent argues that we should look to caselaw interpreting section 115-4.1(a) for guidance, and specifically the case of *People v. Ramirez*, 214 Ill. 2d 176, 184 (2005), in which the supreme court held that the State must strictly comply with the statute's certified mail requirements. If we were to apply that rule to this case, the respondent contends, the State's attempt to accomplish service by publication would be inadequate.

¶ 21    However, we do not agree with the respondent's view of this issue. The problem with the respondent's reliance on section 5-625 of the Act is that it is a component of Part 6 of the Act, which concerns "Trial." Instead, we believe that the provision that should be applied to this case is actually contained in Part 7 of the Act, which more appropriately concerns "Proceedings After Trial, Sentencing." The specific provision that covers the proceedings at issue is section 5-720, which is titled "Probation revocation." Although section 5-720 expressly addresses violations of probation and of conditional discharge, both parties have likened EJJ proceedings to violation-of-probation proceedings, and our court has generally agreed with that comparison. See *In re E.W.*,

2015 IL App (5th) 140341, ¶ 20 ("[T]he EJJ procedure is substantially similar to the procedure followed for the revocation of probation."). Indeed, the split sentences that follow a finding or plea of guilt in an EJJ proceeding are substantially similar to a probationary sentence or conditional discharge in that the respondent can avoid a more-severe sentence by complying with certain conditions and by not committing any new offenses. See 705 ILCS 405/5-810(4) (West 2020) ("If an extended jurisdiction juvenile prosecution under subsection (1) results in a guilty plea, a verdict of guilty, or a finding of guilt, the court shall impose the following: (i) one or more juvenile sentences under Section 5-710; and (ii) an adult criminal sentence \*\*\*, *the execution of which shall be stayed on the condition that the offender not violate the provisions of the juvenile sentence*." (Emphasis added.)). Accordingly, we believe that it is appropriate to apply section 5-720 to EJJ proceedings.

¶ 22    Section 5-720 provides the procedure to be followed when the State seeks to revoke a juvenile's probation or other conditional release. Subsection (1)(c) of the statute provides, in relevant part, that "[i]f a petition is filed charging a violation of a condition of probation or of conditional discharge, the court shall \*\*\* notify the persons named in the petition under Section 5-520, in accordance with the provisions of Section 5-530." Section 5-530, in turn, which is titled "Notice," provides, in relevant part:

>   "(1) A party presenting a supplemental or amended petition or motion to the court shall provide the other parties with a copy of any supplemental or amended petition, motion or accompanying affidavit not yet served upon that party, and shall file proof of that service, in accordance with subsections (2), (3), and (4) of this Section. Written notice of the date,

time and place of the hearing, shall be provided to all parties in accordance with local

court rules.

(2)(a) *On whom made. If a party is represented by an attorney of record, service shall be*

*made upon the attorney. Otherwise service shall be made upon the party*.***" (Emphasis

added.)

Thus, under these statutory provisions, there is no requirement that the respondent be personally

served via certified mail. Rather, sections 5-720 and 5-530 together provide that when the State

files a petition alleging a violation of probation or of the terms of conditional discharge, or a

petition to revoke the stay of an adult sentence in an EJJ proceeding, service on the respondent is

to be accomplished via service on respondent's counsel, if the respondent is so represented. The

respondent in this case does not dispute that his counsel was served with the State's petitions to

revoke the stays of his adult sentences. As a result, the State complied with the statutory notice

requirements.

¶ 23    Statutory compliance notwithstanding, the respondent also contends that service by

certified mail should be required as a matter of due process. It is true that notice is one of the

hallmarks of procedural due process. *In re E.W.*, 2015 IL App (5th) 140341, ¶ 32. "However, due

process is a flexible concept, such that not all situations that call for procedural safeguards require

the same kind of procedure." *Id.* (citing *Lyon v. Department of Children & Family Services*, 209

Ill. 2d 264, 272 (2004)). And defendants in violation-of-probation (VOP) proceedings, to which

both parties have likened EJJ proceedings, are only entitled to the "minimum requirements" of due

process. *Id.* "These 'minimum requirements' include the following: written notice of the claimed

probation violation; disclosure to the probationer of the evidence against him; the opportunity to

be heard in person and present evidence; and the right to confront and cross-examine witnesses." *Id.* (citing *People v. Cox*, 197 Ill. App. 3d 239, 243 (1990)).

¶ 24 As a simple matter, the respondent received written notice of the allegations against him by way of service of the State's petitions on his counsel. Given the well-established rule that defendants in VOP proceedings are only entitled to minimal due process protections, we cannot say that this form of notice was a violation of due process in this case.

¶ 25 However, while we do not see any merit to the respondent's first issue, we do see grounds for relief in his second. The respondent next contends that the proceedings on the State's petitions were improperly conducted in his absence without him having been admonished in five of his cases that he could be tried *in absentia*. As we previously recounted above, section 5-625 of the Act provides that a minor respondent can be tried *in absentia* if the State "has affirmatively proven through substantial evidence that the minor is willfully avoiding trial." Courts interpreting section 5-625's practically identical adult counterpart, section 115-4.1 of the Code of Criminal Procedure, have interpreted this provision as requiring the State to prove that the respondent "(1) was advised of the trial date; (2) was advised that failure to appear could result in trial *in absentia;* and (3) did not appear for trial when the case was called." *People v. Smith*, 188 Ill. 2d 335, 343 (1999). Although both the juvenile and adult statutes discuss "trial" *in absentia*, our court has held that *in absentia* admonishments are also required before a probation revocation hearing can be held in a defendant's absence. See *People v. Sherrod*, 279 Ill. App. 3d 383, 387 (1996). As we noted before, we find that caselaw concerning probation revocation hearings is applicable to the EJJ case before us. Accordingly, the evidentiary hearing on the State's petitions could not be held in the respondent's absence without him having been given *in absentia* admonishments.

¶ 26    We note that although the circuit court stated that it did not believe that *in absentia* admonishments were required in this case because the proceeding was "ministerial" in nature, it most definitely was not. "Ministerial acts are 'those which a person performs on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority, and without reference to the official's discretion as to the propriety of the act.' " *Monson v. City of Danville*, 2018 IL 122486, ¶ 30 (quoting *Snyder v. Curran Township*, 167 Ill. 2d 466, 474 (1995)). Discretionary acts, on the other hand, "involve the exercise of personal deliberation and judgment in deciding whether to perform a particular act, or how and in what manner that act should be performed." *Wrobel v. City of Chicago*, 318 Ill. App. 3d 390, 395 (2000) (citing *D.M. v. National School Bus Service, Inc.,* 305 Ill. App. 3d 735, 739 (1999)). The circuit court in this proceeding was tasked with hearing and ruling on the admissibility evidence, judging the credibility of witnesses, and determining whether the State had proven certain facts. Unlike a ministerial task, the court was not compelled to take any particular action. Rather, it had the discretion in multiple areas and in the ultimate determination of whether the State had established grounds to revoke the stays of the respondent's adult sentences. *Cf. Braglia v. McHenry County State's Attorney's Office*, 371 Ill. App. 3d 790, 795 (2007) (determining that a duty was ministerial because it did not involve holding a hearing, engaging in fact-finding, or passing upon any controversial points of law). Accordingly, this was not a ministerial proceeding, and *in absentia* admonishments were required before the proceedings at issue could be conducted in the respondent's absence.

¶ 27    It is undisputed that the respondent did not receive *in absentia* admonishments in all three of his Class X cases (18JD925, 18JD926, & 18JD929) and in two of his Class 2 cases (18JD927 & 18JD928). But, while acknowledging that fact, the State contends that the circuit court

- 14 -

substantially complied with the *in absentia* requirements and that the respondent was generally aware that he could be tried *in absentia* because he had been properly admonished in other cases and on three separate occasions. We reject this argument.

¶ 28    There is a reason that courts spend so much time informing defendants of their rights and admonishing them about the legal consequences that certain actions have on those rights. That is because virtually all defendants are not trained in the law, and we cannot assume that they know all of their rights and how their rights might change over the course of a case or be affected by certain decisions that they might make. We cannot assume, for instance, that the respondent in this case would know that he could be tried *in absentia* in all of his cases when he was only admonished of that consequence in a few of them, and in none of his Class X cases. When courts interpret ambiguous statutes, they sometimes apply the guiding principle that "the expression of one thing is the exclusion of another." *Metzger v. DaRosa*, 209 Ill. 2d 30, 44 (2004) ("This rule of statutory construction is based on logic and common sense. It expresses the learning of common experience that when people say one thing they do not mean something else."). We could hardly fault someone in the respondent's position from applying that same idea and inferring that the absence of *in absentia* admonishments in his Class X cases, when he was given such admonishments in his Class 2 cases, means that he could not be tried *in absentia* in those Class X cases. This idea is further bolstered when we look at the particular language that the court used in the *in absentia* admonishments that it did give the respondent.

¶ 29    At the arraignment for cases 18JD930 (on which the State did not move forward) and 18JD1163, the court told the respondent that "[o]n both of the petitions" he could be tried *in absentia*, and in 18JD1174 and 18JD1175 the court informed the respondent that he could be tried

*in absentia* "on both of these charges" if he did not return to court. Thus, even in the cases in which the court gave the respondent *in absentia* admonishments, the admonishments contained restrictive phrasing limiting them to the individual charges on which the respondent was being arraigned at the time. Accordingly, we can hardly say that the respondent should have known that he could be tried *in absentia* in the cases in which he was not admonished about that risk, given the restrictive language used in the admonishments that he did receive.

¶ 30    While it is true that only "substantial compliance" is required when it comes to admonishing a respondent that he or she can be tried *in absentia* (*People v. Liss*, 2012 IL App (2d) 101191, ¶ 17), the admonitions given to the respondent in this case did not meet even that lesser standard. When an accused is being prosecuted in multiple cases at the same time, he or she has the full panoply of constitutional rights in each individual case and can only waive those rights by doing so in each case individually. See, *e.g.*, *People v. Ogiela*, 2022 IL App (2d) 210429-U, ¶¶ 43–44 (finding valid jury-trial waivers when the defendant signed separate waivers for each of his cases) (unpublished order under Supreme Court Rule 23). It follows that admonishments of those rights must also be made in each individual case. When the court in this case failed to admonish the respondent in five of his cases that he could be tried *in absentia*, the court failed to substantially comply with the requirements of section 5-625 of the Act, and the respondent's absence from the evidentiary hearing on five of the State's petitions to lift the stays of the respondent's adult sentences cannot be deemed willful. Cf. *People v. Phillips*, 242 Ill. 2d 189, 199 (2011) ("[W]hen a trial judge does not admonish a defendant in any way under section 113–4(e) [the adult counterpart to section 5-625] at the time of his arraignment, or at any later court date that he is

present, and there has not been a valid waiver of the statutory requirement, there cannot be substantial compliance with the Code.").

¶ 31     The State argues in the alternative that, even if the admonishments given to the respondent in this case were insufficient, the circuit court's errors are harmless. However, the State does not cite any cases in which a court has deemed it harmless to hold a hearing in a defendant's absence without having given sufficient *in absentia* admonishments. Instead, the State notes that, as a general matter, violations of due process can be deemed harmless, and it relies primarily on a single postconviction case in support of its argument. In *People v. Pingleton*, 2022 IL 127680, a defendant filed a petition for postconviction relief alleging ineffective assistance of trial and appellate counsel. *Id.* ¶ 10 The petition advanced to the second stage, and the defendant was appointed counsel. *Id.* The State then filed a motion to dismiss the petition, which was served on the defendant's counsel. *Id.* ¶ 11. Two years later, the defendant's counsel moved to withdraw from the case, alleging that the defendant's claims could not be supported as a matter of law. *Id.* ¶ 12. After the defendant filed two responses and his counsel filed a reply, the court set the matter for a "status" hearing. *Id.* ¶¶ 14–17.

¶ 32     At the "status" hearing, the court first heard argument on the State's motion to dismiss, which the defendant's counsel did not contest. *Id.* ¶ 17. The court then heard argument from defense counsel and the defendant on counsel's motion to withdraw, which the court took under advisement before later issuing a written ruling granting counsel's motion to withdraw and granting the State's motion to dismiss on the grounds that the defendant had failed to make a substantial showing of a constitutional violation. *Id.* ¶¶ 19–20.

¶ 33    On appeal, the defendant argued that he had been denied procedural due process when the postconviction court granted the State's motion to dismiss following a "status" hearing without first giving the defendant notice and an opportunity to be heard. *Id.* ¶ 22. The appellate court agreed that the defendant had been denied due process, but it nonetheless held that the error was harmless because the defendant's claims lacked merit as a matter of law. *Id.* ¶¶ 23–25.

¶ 34    The supreme court granted review and reached the same conclusions as the appellate court. The supreme court observed that harmless-error analysis can be applied to violations of procedural due process when the violation in question is not a structural error, or one that "results in 'consequences that are necessarily unquantifiable and indeterminate.' " *Id.* ¶ 44 (quoting *People v. Stoecker*, 2020 IL 124807, ¶ 23). The court held that it was able to quantify the effect of the error in the defendant's case and determine that it was harmless because it could conclude as a matter of law that the defendant's claims were without merit. *Id.* ¶ 66.

¶ 35    The State asks that we apply the same reasoning here and conclude that any error regarding the lack of *in absentia* admonishments is harmless because the evidence of the respondent's guilt was more than strong enough to meet the preponderance-of-the-evidence standard applicable in this case. The State points out that the respondent's counsel did not present any evidence at the evidentiary hearing on the State's petitions and had the opportunity to cross-examine the State's witnesses. Thus, the State maintains, the respondent already had an opportunity to rebut the State's evidence and there is nothing that would have been any different had the respondent been present at the hearing.

¶ 36    We do not agree. While the State may be correct that the finding of guilt was not against the manifest weight of the evidence, as we explain further in the next issue, that does not

necessarily mean that the impact of the errors in this case is quantifiable and harmless. In *Pingleton*, the due process violations could be deemed harmless because all that was at issue were pure questions of law and there was very little that the defendant could have added on those issues, particularly when he had already filed a petition informing the court of his arguments. That is not what we have here. In this case, the hearing that was held in the respondent's absence was not one addressing a purely legal issue but rather one that was primarily concerned with fact-finding. Unlike a question of law, a question of fact is one to which a respondent can significantly contribute. Had the respondent been present at the hearing, he would have had the opportunity to testify and present his side of the case if he wished, and he would have been able to use his personal knowledge of the facts of the case to assist his counsel in cross-examining the State's witnesses. We do not know what impact the respondent's presence might have had in those regards, and, as a result, the impact of the error in this case is not quantifiable.

¶ 37     The State points out that the respondent has "given no indication, even hypothetically, that he could have offered exculpatory testimony at the revocation hearing," but he is not required to do so. He has proven that his right to due process has been violated, and it is now the State's burden to prove that those constitutional violations are harmless. See *People v. Diggins*, 2016 IL App (1st) 142088, ¶ 17. Given that the proceeding at issue in this case was an evidentiary hearing at which the respondent very well may have been able to provide a substantive contribution, the State has not done so.

¶ 38     Accordingly, we vacate the adult sentences imposed in the five cases in which the respondent was not admonished that he could be tried *in absentia*.

¶ 39    But that does not end our inquiry. Because the sentences in the cases in which the respondent was properly admonished (18JD1163, 18JD1174, & 18JD1175) survive the respondent's first two arguments, we must still examine whether the respondent's remaining arguments establish reversible error for those three cases.

¶ 40    In his third issue, the respondent contends that the State failed to prove that he committed a new PSMV offense. At the outset, we note that for this issue we again look to section 5-720 of the Act ("Probation revocation") for guidance due to the similarities between VOP proceedings and the present EJJ proceeding. Subsection (3) of that statute provides that, at the hearing on the State's petition alleging a violation of the conditions of the respondent's sentence, "the State shall have the burden of going forward with the evidence and proving the violation by a preponderance of the evidence." This burden of proof applies to each element of the offense that the respondent is accused of committing. See *People v. Halterman*, 45 Ill. App. 3d 605, 608 (1977). When the circuit court finds that the State has proven a violation, that finding will only be disturbed on appeal if it is against the manifest weight of the evidence. *People v. Colon*, 225 Ill. 2d 125, 158 (2007). " 'A judgment is against the manifest weight of the evidence only when an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on evidence.' " *People v. Colquitt*, 2013 IL App (1st) 121138, ¶ 28 (quoting *Bazydlo v. Volant,* 164 Ill. 2d 207, 215 (1995)).

¶ 41    The State alleged that the respondent committed the offense of possession of a stolen motor vehicle. To prove that allegation, the State was required to show that "[(1)] the [respondent] possessed the vehicle, [(2)] that he was not entitled to possess the vehicle, and [(3)] that he knew

the vehicle was stolen." *People v. Cox*, 195 Ill. 2d 378, 391 (2001) (citing *People v. Anderson,* 188 Ill. 2d 384, 389 (1999)); see also 625 ILCS 5/4-103(a)(1) (West 2020).

¶ 42    The circuit court in this case found that the State met its burden, with the court explaining that "he [the respondent] knew that vehicle to be stolen when he backed it up into the squad car, got out, let the vehicle hit -- hit the squad car, and then took off in another vehicle." The respondent does not dispute that the State showed that he was in possession of the Audi SUV that backed into Officer Carreno's vehicle, but he argues that the court's ruling was contrary to the evidence because the testimony from the State's witnesses failed to show that he did not have permission to possess the vehicle and that he knew the vehicle to be stolen.

¶ 43    We disagree and believe that logical inferences from the testimony could have established the second and third elements. Regarding the respondent's lack of entitlement to possess the vehicle, Christopher Bard, the general manager of Audi of Orland Park, confirmed in his testimony that the company transporting the Audi in question was "the only person or entity which had permission to have control of that vehicle" while it was being delivered to the dealership. Given the respondent's young age and his criminal history involving the theft or possession of stolen vehicles, it seems highly unlikely that he was employed by the transport company and given permission to possess a brand-new Audi SUV, and certainly there was no evidence suggesting that he was. Further, and more in line with the circuit court's stated reasoning, even if we ignore the alleged link between the vehicle that Carreno described and the damaged vehicle that was delivered to Audi of Orland Park, the fact that the respondent crashed and abandoned a vehicle that had "wrapping" on it and did not have any license plates fairly suggests that the vehicle was likely stolen and that the respondent was not authorized to possess it. For each of these reasons, the

court's finding that the State proved that the respondent was not entitled to possess the Audi in question is not against the manifest weight of the evidence.

¶ 44 Similarly, we can infer from the respondent's actions that he knew the vehicle to be stolen. Section 4-103(a)(1), which proscribes possession of a stolen vehicle, provides that "[k]nowledge that a vehicle *** is stolen *** may be inferred: (A) from the surrounding facts and circumstances, which would lead a reasonable person to believe that the vehicle *** is stolen ***; or (B) if the person exercises exclusive unexplained possession" over the vehicle. 625 ILCS 5/4-103(a)(1). Additionally, "[e]vidence of flight may be considered to infer the defendant's knowledge that the vehicle was stolen." *People v. Whitfield*, 214 Ill. App. 3d 446, 454 (1991) (citing *People v. Tucker* 186 Ill. App. 3d 683, 694 (1989)). The court in this case inferred from the respondent's actions that he knew that the vehicle was stolen, and that finding is supported by the evidence. Testimony established that the vehicle did not have any license plates, that the vehicle had protective wrapping on it, that the respondent reversed the vehicle into Officer Carreno's vehicle and then abandoned it, and that the respondent then fled the scene in another car. It would be reasonable to infer from these facts that the respondent knew the vehicle to be stolen. At the very least these facts do not make the opposite conclusion apparent. Accordingly, the court's finding that the State established that the respondent committed the act of possession of a stolen motor vehicle is not against the manifest weight of the evidence.

¶ 45 The respondent next argues that the circuit court erred in admitting certain hearsay testimony over the respondent's counsel's objection and that counsel was ineffective for not objecting to the admission of other pieces of hearsay testimony. However, even if we exclude the testimony that the respondent alleges was hearsay, specifically Bard's discussion of what the

transport truck driver told him about the damaged Audi and Bard's testimony regarding the Audi's VIN, for the purposes of this EJJ proceeding the non-hearsay testimony from Officer Carreno about the respondent deliberately crashing and abandoning a vehicle with protective wrapping and no license plates was sufficient on its own to support the circuit court's finding that the respondent committed the offense of PSMV. Accordingly, there was no harm or prejudice from the admission or failure to object to the admission of the alleged hearsay testimony.

¶ 46    Lastly, the respondent asserts that the circuit court erred when, while imposing his split juvenile and adult sentences in 2019, it stated that he would serve 85% of his twenty-one-year adult sentence for aggravated vehicular hijacking in case 18JD925. The respondent asserts that under the truth-in-sentencing law he should only be required to serve 50% of that sentence because the court did not make a finding of great bodily harm to the victim. See 730 ILCS 5/3-6-3(a)(2)(iii), (a)(2.1) (West 2018). However, because we are vacating his sentence in case 18JD925 due to the lack of an *in absentia* admonishment, this issue is moot. See *In re C.C.*, 2015 IL App (1st) 142306, ¶ 15 (holding that a respondent does not have standing to challenge a conditional adult sentence in an EJJ proceeding until the adult sentence has actually been imposed).

¶ 47    Based on the foregoing, we vacate the judgments lifting the stays and imposing the adult sentences in cases 18JD925, 18JD926, 18JD927, 18JD928, and 18JD929. Proceedings on the State's petitions to revoke the stays of the respondent's adult sentences in those cases cannot proceed in the respondent's absence until the respondent has been admonished in each of those cases that he can be tried *in absentia*. The judgments lifting the stays and imposing the adult sentences in cases 18JD1163, 18JD1174, and 18JD1175 are affirmed.

¶ 48    No. 1-21-1006, Vacated and remanded with directions.

¶ 49       No. 1-21-1007, Vacated and remanded with directions.

¶ 50       No. 1-21-1008, Vacated and remanded with directions.

¶ 51       No. 1-21-1009, Vacated and remanded with directions.

¶ 52       No. 1-21-1010, Affirmed.

¶ 53       No. 1-21-1011, Vacated and remanded with directions.

¶ 54       No. 1-21-1012, Affirmed.

¶ 55       No. 1-21-1013, Affirmed.

Nos. 1-21-1006, 1-21-1007, 1-21-1008, 1-21-1009,
1-21-1010, 1-21-1011, 1-21-1012, 1-21-1013 (cons.)

---

**In re D.W., a minor 2023** IL App (1st) 221006, 211007, 211008, 211009, 211010, 211011, 211012, 211013 (cons.)

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, Nos. 18 JD 925, 18 JD 926, 18 JD 927, 18 JD 928, 18 JD 929, 18 JD 1163, 18 JD 1174, 18 JD 1175 86 CR 10404, Honorable Terrence V. Sharkey Judge, presiding. |

---

Attorneys for Appellant:     JAMES E. CHADD, State Appellate Defender
DOUGLAS R. HOFF, Deputy Defender
DEEPA PUNJABI, Assistant Appellate Defender
Office of the State Appellate Defender, First Judicial District
203 N. LaSalle St., 24th Floor
Chicago, IL 60601
Phone: (312) 814-5472

Attorneys for Appellee:     KIMBERLY M. FOXX,
State's Attorney, County of Cook,
ENRIQUE ABRAHAM,
DOUGLAS P. HARVATH,
TASHA-MARIE KELLY, Asst State's Attorneys, *Of Counsel*
Room 309 - Richard J. Daley Center,
Chicago, Illinois 60602
Phone:  (312) 603-5496