NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (4th) 230789-U

NO. 4-23-0789

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 15, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* S.B., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Adams County |
| Petitioner-Appellee, | ) | No. 23JD18 |
| | ) | |
| v. | ) | Honorable |
| S.B., | ) | John C. Wooleyhan, |
| Respondent-Appellant). | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court.
Justices Cavanagh and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held:*    The appellate court vacated the trial court's adjudication of delinquency because (1) respondent was tried *in absentia* and (2) the court failed to provide the requisite admonitions.

¶ 2    In March 2023, the State filed a petition for adjudication of wardship, alleging respondent, S.B. (born in March 2011), committed motor vehicle theft (720 ILCS 5/16-1(a)(1)(C), (b)(4), (b)(5) (West 2022)) and theft (*id.* § 16-1(a)(1)(C), (b)(4)). In June 2023, the trial court conducted a bench trial, at which respondent was not present, and adjudicated him *in absentia* to be a delinquent minor. In August 2023, the court made respondent a ward of the court and sentenced him to 12 months of probation.

¶ 3    Respondent appeals, arguing (1) the trial court erred by trying him *in absentia* without admonishing him of the possibility he could be tried in his absence, (2) the State failed to prove him guilty of the charges beyond a reasonable doubt, (3) the allegations in the delinquency

petition were insufficient to apprise him of which subsection of the theft statute he was accused of violating, and (4) his felony adjudications should be reduced to misdemeanors because the State failed to prove the value of the stolen property.

¶ 4    We agree with respondent's first argument. However, because we conclude that the State presented sufficient evidence to permit respondent's retrial, we vacate respondent's delinquency adjudication and remand for further proceedings.

¶ 5                      I. BACKGROUND

¶ 6              A. The Delinquency Petition and Pretrial Proceedings

¶ 7    In March 2023, the State filed a petition for adjudication of wardship, alleging respondent was a delinquent minor and should be made a ward of the court. The petition alleged that in February 2023, respondent committed three theft crimes: (1) motor vehicle theft of a Toyota Rav4 belonging to Jason Schutte and having a value of greater than $10,000 but not exceeding $100,000, "and that [respondent] used, concealed and/or abandoned said motor vehicle knowing such use, concealment and/or abandonment probably would deprive [the owner] permanently of such use or benefit thereof" (720 ILCS 5/16-1(a)(1)(C), (b)(5) (West 2022)); (2) motor vehicle theft of a Honda van belonging to Michael Norris and having a value greater than $500 but less than $10,000 (*id.* § 16-1(a)(1)(C), (b)(4)); and (3) theft of the "keys and/or key fobs to vehicles owned by Jason Schutte and Michael Norris, together having a value of greater than $500, with the intent to deprive [the owners] permanently of the use and benefit of such keys/fobs" (*id.*).

¶ 8    In April 2023, the trial court conducted a hearing on the petition for adjudication, at which respondent and his mother appeared personally. The court informed respondent of the charges and stated the following:

        "I need to tell you today that you do have certain rights in this case. You

have the right to an attorney. You have the right to be in court each time the case comes up and look at all the court records, and you have the right to have a hearing in court on this petition to find out if what it says is true or not true. Do you understand those rights that you have?

THE MINOR: Yes, [Y]our Honor."

¶ 9 The trial court appointed counsel for respondent and continued the case.

¶ 10 In May 2023, the trial court conducted a further hearing on the petition, at which respondent and his mother appeared personally and with counsel. Respondent's counsel informed the court that he was ready for trial, and the court set a trial date. The court did not admonish respondent that if he failed to appear for trial, he could be tried in his absence.

¶ 11 B. The Bench Trial

¶ 12 1. *Respondent's Absence*

¶ 13 In June 2023, the trial court conducted a bench trial regarding the allegations in the petition, but respondent was not present. (We note that respondent's mother also was not present.) Respondent's counsel stated the following:

"Yesterday I became concerned when I was unable to reach my client so I did actually go to his residence and spoke with his mother. Mother informed me he had been absent from the home for a couple of days. She had also reached out to law enforcement, filed a missing person report, as she was concerned as well. I've had no communication with the young man since the last court date, unfortunately.

That being the case, with him not being present to assist me and advise me on this matter, I would be unable to proceed today, would respectfully ask for a continuance until such time as he can be present and provide assistance to his own

defense."

¶ 14        The State objected to a continuance, and respondent's counsel clarified that he "had no communication with [respondent] since the last court date despite my best efforts." The trial court denied the request for a continuance, explaining that respondent had appeared personally in court at the prior hearing when the case was set for trial. The court further stated as follows:

> "I think the law is fairly clear that the time standards are not subject to failure to communicate or cooperate by the minor. And if he fails to cooperate with his counsel and fails to appear in court then he would do so at his own peril. So the People are ready for trial, so the motion to continue would be denied.
>
> We can go ahead and have the trial for the reason the minor cannot simply delay the case at this point by simply not coming to court."

¶ 15        2. *The State's Case-in-Chief*

¶ 16        Allison Nelson testified she was respondent's neighbor and lived in a trailer park outside of town. On February 27, 2023, respondent came to her house with two sets of car keys and asked for a ride to town "to go get a van." Nelson testified that respondent said it was a Honda van. Respondent told her the keys were stolen and that he got the keys to the van by breaking into the vehicle and taking them. Respondent further indicated that he was not sure where the van was because he was not sure if a friend he was with the night before took the car.

¶ 17        Nelson testified that she called the nonemergency line of the Quincy Police Department. Nelson, her fiancé, and respondent then got into Nelson's car, and her fiancé drove to Quincy. Nelson stated she never hung up the phone and was telling the police where they were. Eventually, the police began to follow Nelson's car. Nelson's fiancé pulled the car over, and he and Nelson exited the car to speak to the police. On cross-examination, Nelson admitted she had

- 4 -

been convicted of several felony offenses for fraud and theft.

¶ 18    Officer Mark Landis of the Quincy Police Department testified that he was on patrol with his partner on February 27, 2023, when he received information from dispatch to follow a particular car. Landis stated he had been investigating a string of vehicle thefts and the call related to a vehicle theft. Landis testified that the vehicle he was following pulled to the side of the road and he stopped behind it. Two adult occupants came out and spoke with him. Landis went to the car, saw respondent, and asked respondent if he had any keys on him. Respondent answered that there were two sets of keys in the car, and respondent retrieved those keys from under the passenger seat of the car and gave them to Landis.

¶ 19    Landis testified that he took the keys back to the police department and gave them to his watch commander. Landis examined the prior cases he had involving stolen vehicles and was able to determine the owners of the keys and contact them. One set of keys belonged to a silver Honda van. Landis did not personally return the keys to the owners.

¶ 20                      3. *The Bystander's Report*

¶ 21    The trial court then took a recess. The transcript of the trial proceedings does not resume until the middle of the State's closing argument. On appeal, the parties supplemented the record with a bystander's report signed by respondent's counsel, the State, and the trial court. The bystander's report provides, in relevant part, as follows:

> "At the conclusion of Officer Landis' testimony the parties took a break and the recording did not resume until the State had started [its] closing arguments.
>
> Discussion of presenting another police officer was had but the State elected not to present a second officer.
>
> The record of proceedings subsequently failed to record the testimony of

the State's final witness, Michael Norris (owner of the vehicle in question). Also missing from the record is respondent minor's motion for directed finding, presentation of documentary evidence from counsel for the minor and a brief portion of the beginning of the State's closing argument.

Michael Norris testified to events occurring on or around the date of the alleged offense of February 26, 2023. Specifically:

    a.  Mr. Norris testified he gave no permission to the Minor or any other person to take his vehicle.

    b.  He discovered his vehicle missing on February 26, 2023[,] and notified police.

    c.  He subsequently found his vehicle through his own efforts and secured it with a second set of keys he had.

    d.  Said vehicle was in poor condition when found and he characterized it as a total loss. There were no keys in the vehicle when he found it.

    e.  He subsequently received a set of keys for the vehicle from an officer of Quincy Police Department."

¶ 22                     4. *The Trial Court's Ruling*

¶ 23        After closing arguments, the trial court began by noting that the State voluntarily dismissed count I of the petition. The court then found that the State proved respondent guilty of counts II and III beyond a reasonable doubt based on the evidence presented and the credibility of the witnesses. The court noted that a warrant had already issued for respondent's arrest and continued the case for sentencing.

¶ 24                                   C. The Sentencing Hearing

¶ 25             In August 2023, the trial court conducted a sentencing hearing, at which respondent personally appeared. After considering the arguments of the parties, the court sentenced respondent to 12 months of probation.

¶ 26             This appeal followed.

¶ 27                                D. Illinois Supreme Court Rule 311

¶ 28             Initially, we note this decision is filed outside the 150-day time frame specified in Illinois Supreme Court Rule 311(a)(5) (eff. July 1, 2018), which states, "[e]xcept for good cause shown, the appellate court shall issue its decision within 150 days after the filing of the notice of appeal." Respondent filed his notice of appeal on September 8, 2023, making the disposition due February 5, 2024. However, respondent twice requested an extension of time to file his appellant brief and requested oral argument, which was conducted on February 7, 2024. Accordingly, we conclude that good cause exists for the delayed filing.

¶ 29                                       II. ANALYSIS

¶ 30             Respondent appeals, arguing (1) the trial court erred by trying him *in absentia* without admonishing him of the possibility he could be tried in his absence, (2) the State failed to prove him guilty of the charges beyond a reasonable doubt, (3) the allegations in the delinquency petition were insufficient to apprise him of which subsection of the theft statute he was accused of violating, and (4) his felony adjudications should be reduced to misdemeanors because the State failed to prove the value of the stolen property.

¶ 31             We agree with respondent's first argument. However, because we conclude that the State presented sufficient evidence to permit respondent's retrial, we vacate respondent's delinquency adjudication and remand for further proceedings.

¶ 32                    A. Proceedings *in Absentia*

¶ 33                      1. *The Applicable Law*

¶ 34        Section 5-625(1) of the Juvenile Court Act of 1987 (705 ILCS 405/5-625(1) (West 2022)) provides as follows:

> "When a minor after arrest and an initial court appearance for a felony, fails to appear for trial, at the request of the State and after the State has affirmatively proven through substantial evidence that the minor is willfully avoiding trial, the court may commence trial in the absence of the minor."

¶ 35        Recently, the First District addressed the requirements for trying juveniles *in absentia* and wrote the following:

> "Courts interpreting section 5-625's practically identical adult counterpart, section 115-4.1 of the Code [of Criminal Procedure of 1963 (725 ILCS 5/114-1 (West 2020))], have interpreted this provision as requiring the State to prove that the respondent '(1) was advised of the trial date; (2) was advised that failure to appear could result in trial *in absentia*; and (3) did not appear for trial when the case was called.' " *In re D.W.*, 2023 IL App (1st) 211006, ¶ 25, 221 N.E.3d 1144 (quoting *People v. Smith*, 188 Ill. 2d 335, 343, 721 N.E.2d 553, 558 (1999)).

¶ 36                          2. *This Case*

¶ 37        Here, the State attempts to argue that respondent was "arguably 'on the run' " because (1) respondent was present at the prior hearing when a trial date was set and (2) a warrant for his arrest had issued before trial due to respondent's being a suspect in another vehicle theft. However, the trial court never advised respondent, who was just 12 years old, that he could be tried in his absence if he failed to appear. In fact, at respondent's first appearance, the court

informed him he had a right to be present for the proceedings.

¶ 38        As the First District stated in *D.W.*, "[w]e do not know what impact the respondent's presence might have had [on multiple aspects of the trial]; as a result, the impact of the error in this case is not quantifiable." *Id.* ¶ 36. Because the trial court failed to admonish respondent that he could be tried *in absentia*, we vacate his delinquency findings.

¶ 39                              B. Double Jeopardy

¶ 40        Although we have already concluded respondent's delinquency findings must be vacated, whether the evidence presented at trial was sufficient is relevant to determining if respondent can be retried consistent with double jeopardy principles. See *People v. Austin M.*, 2012 IL 111194, ¶ 106, 975 N.E.2d 22 ("Although we have already reversed Austin's adjudication, we must determine whether double jeopardy would prevent his retrial. See *People v. Lopez*, 229 Ill. 2d 322, 367[, 892 N.E.2d 1047, 1072] (2008) (retrial raises double jeopardy concerns and requires us to consider the sufficiency of the evidence).").

¶ 41                              1. *The Applicable Law*

¶ 42        The Illinois Supreme Court has described the standard of review for sufficiency of the evidence claims as follows:

>      "In delinquency proceedings, as in criminal cases, when evaluating a challenge to the sufficiency of evidence, the relevant question is 'whether, [after] viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citations.] Generally, the trier of fact has had the opportunity to hear and see the witnesses and, for that reason, is in the best position to judge credibility. [Citation.] Thus, it is not the function of a reviewing court to retry the

defendant. [Citation.] Rather, a reviewing court 'must allow all reasonable inferences from the record in favor of the prosecution' [citation] and reverse a conviction only if the evidence is so improbable, unsatisfactory, or inconclusive that it creates a reasonable doubt of defendant's guilt [citation]." *Austin M.*, 2012 IL 111194, ¶ 107.

¶ 43                            2. *This Case*

¶ 44        Based on our review of the record, taking into account the trial court's credibility determinations and making all reasonable inferences in favor of the State, we conclude that the State presented sufficient evidence to find respondent guilty beyond a reasonable doubt. Accordingly, any retrial would not violate double jeopardy.

¶ 45        We briefly note that respondent also (1) challenges the sufficiency of the petition for adjudication of wardship and (2) requests this court reduce his offenses to misdemeanors based on lack of evidence as to value. However, as respondent acknowledges in his brief, "the double jeopardy clause does not preclude retrial of a defendant whose conviction has been set aside because of an error in the proceedings leading to the conviction." *People v. Olivera*, 164 Ill. 2d 382, 393, 647 N.E.2d 926, 931 (1995). Because we vacate respondent's delinquency findings, respondent's contentions are moot or premature and may be raised on remand, if appropriate.

¶ 46                           III. CONCLUSION

¶ 47        For the reasons stated, we vacate respondent's adjudication of delinquency and remand for further proceedings.

¶ 48        Vacated and remanded.